**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROY WOOLARD,

    Plaintiff - Appellee and Cross-Appellant,

v.

JLG INDUSTRIES, INC., a Pennsylvania corporation,

    Defendant,

and

YOUNG ENTERPRISES, INC.; PRIMECO, INC., d/b/a PRIME EQUIPMENT COMPANY, a Texas corporation,

    Defendants - Appellants and Cross-Appellees.

Nos. 98-6135
98-6136
98-6170

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(CIV-96-0670-M)

---

Edward S. Hubbard, of Nicholas, Grant & Hubbard, P.L.L.C., Houston, Texas, (T.B. Nicholas, Jr., and Eileen K. Wilson, of Nicholas, Grant & Hubbard, P.L.L.C., Houston, Texas, and W. Wayne Mills, of Mills & Whitten, Oklahoma

City, Oklahoma, with him on the briefs), for Appellant - Cross-Appellee Primeco, Inc.

Tim N. Cheek (D. Todd Riddles with him on the briefs) of Cheek, Cheek, & Cheek, Oklahoma City, Oklahoma, for Appellant - Cross-Appellee Young Enterprises, Inc.

Elizabeth R. Castleberry (with Jack S. Dawson and James A. Scimeca with her on the briefs) of Miller Dollarhide, Oklahoma City, Oklahoma, Appellee - Cross-Appellant Roy Woolard.

---

Before **ANDERSON** , **BARRETT** , and **HENRY** , Circuit Judges.

---

**HENRY,** Circuit Judge.

---

Roy Woolard was injured by the collapse of an aerial work platform (or "lift"). He subsequently filed this diversity action against JLG Industries, Inc. ("JLG"), the lift's manufacturer, and Young Enterprises ("Young"), the lift's owner at the time of the accident, alleging the defective manufacture, design, distribution, and sale of the lift. Mr. Woolard later joined Primeco Inc., the distributor that sold the lift to Young, alleging Primeco and its predecessor-in-interest, American Hi-Lift (together, "Primeco") failed to properly maintain and repair the lift and failed to warn that the lift was unsafe. Young, as a third-party plaintiff, filed a cross-claim against Primeco seeking indemnification for liability based on theories of breach of contract, negligence, and strict products liability.

Prior to trial, Mr. Woolard settled his products liability claim against JLG.

2

His negligence claims against Young and Primeco proceeded to trial. Specifically, Mr. Woolard asserted that (1) Young owed him a duty to maintain, inspect, and provide safe and reliable equipment; (2) Young breached that duty through its failure to perform the required inspections; (3) Primeco, as the maintenance agent under a Distributor and Sales Agreement (the "Distributor Agreement") with JLG, was responsible for maintaining and repairing the lift; (4) Primeco, having performed repairs to an electrical switch shortly before the accident, knew that the lift was unsafe, and failed to notify either Mr. Woolard, or his employer, Young Electric, of the lift's condition or of the need for annual inspection of the lift; (5) Primeco failed to notify Young of the required annual inspections and failed to perform the required annual inspections; (6) Primeco had a duty to Mr. Woolard and his employer to inform them of the need for inspection of the lift as a third-party beneficiary of the Distributor Agreement; and (7) Primeco's predecessor installed unsafe replacement pins into the lift, the failure of which contributed to the accident.

At trial, the jury found that Young was forty percent negligent and that Primeco was sixty percent negligent, and awarded Mr. Woolard $1.5 million in damages. The district court entered judgment for Mr. Woolard, reducing his damages by $300,000.00 (the amount of his settlement with JLG) and calculated a prejudgment interest award based on the reduced figure.

Primeco now appeals, arguing that the district court erred in denying its motion for judgment as a matter of law and its motion for a new trial. Primeco raises the following arguments and defenses to support its claim that its alleged negligence did not cause the accident: (1) Primeco did not breach its common law duty to exercise ordinary care in repairing and maintaining the lift; (2) because Mr. Woolard was not a third-party beneficiary of the Distributor Agreement, the Distributor Agreement did not impose a contractual duty upon Primeco to warn of the lift's dangerous condition; (3) Primeco was not the proximate cause of Mr. Woolard's injuries; (4) the district court erred when it denied Primeco's motion for remittitur; and (5) the district court improperly altered one of the jury instructions after closing arguments. Mr. Woolard cross-appeals, arguing that the district court erred in calculating prejudgment interest under Oklahoma law.

In addition, Young, as cross-appellant, appeals on its cross-claims against Primeco. During this appeal, Young settled all of its claims with Mr. Woolard for $400,000.00. Young argues that it was entitled to either judgment as a matter of law and restitution in the form of indemnification or contribution based on its cross-claims against Primeco. Young's cross-claims sought to hold Primeco liable for any claims Mr. Woolard successfully lodged against Young based on theories of negligence, strict products liability, and breach of contract. In the

4

alternative, Young argues that the district court erred when it failed to properly instruct the jury on these cross-claims.

We exercise jurisdiction under 28 U.S.C. § 1291 and affirm in part and reverse in part. In particular, we hold that the district court properly denied Primeco's motion for a judgment as a matter of law and its motion for a new trial. Further, we hold that the district court did not err in amending the jury instructions after closing arguments. In Mr. Woolard's cross-appeal, we hold that the district court improperly calculated prejudgment interest, and we remand for recalculation. Finally, on Young's appeal of its cross-claims, we hold that the district court properly denied the motion for judgment as a matter of law and did not err in refusing Young's requested instructions on its cross-claims.

## I.     BACKGROUND

JLG is the designer and manufacturer of the lift that collapsed and caused Mr. Woolard's injuries. The lift consisted of a base, a telescoping arm (or "boom"), and a basket attached to the end of boom. With a worker in the basket, the boom could extend outward and upward 110 feet and swing side to side, providing a stable platform.

On April 2, 1996, Mr. Woolard was working as a journeyman electrician for a private electrical repair company. He had been hired as a subcontractor for

a construction project at Altus Air Force Base in Altus, Oklahoma. In connection with this project, Mr. Woolard's employer leased two JLG aerial lifts from co-defendant Young. While working on the project, Mr. Woolard was injured when one of the lifts collapsed, causing him to fall approximately seventy feet.

At trial, Mr. Woolard submitted evidence explaining the collapse of the boom. Mr. William Munsel, a mechanical engineer and metallurgist, testified that the boom contained a defective sheave pin that failed, causing the collapse of the boom. See Aplts' App. vol. VIII, at 174, 177-80. He explained that two pins hold a single eye bolt in place and that this mechanism is critical to the telescoping of the boom. See id. at 180. According to Mr. Munsel, one of the sheave pins was made of an inferior, chrome-plated soft metal. See id. at 184-86. The recommended JLG pin is made of hardened steel. See id. at 184-85. Mr. Munsel concluded that the soft-metal wore excessively, causing the pin's eye bolt to fail and the boom to collapse. He testified that the difference between a proper hardened steel pin and a soft metal pin was visually obvious. See id. at 185-86.

Mr. Woolard argued that Primeco, which rents, sells, and services industrial equipment, was responsible for the accident. In 1989, Primeco purchased the lift from its manufacturer, JLG. Mr. Woolard contended that Primeco negligently rebuilt the lift and installed the inferior soft metal pins. He presented evidence that Primeco performed a complete overhaul of the unit in

6

1990. See id. at 280. As part of the overhaul, Primeco replaced the factory-installed "sheave pins" with new pins. See id. vol. IX, at 296-97. In 1993, Primeco sold the lift to Young. Although Primeco asserted that it used JLG-authorized parts during the overhaul, Mr. Woolard presented evidence indicating that Primeco may not have received the hardened steel metal pins it ordered and that it used one of the chrome-plated soft-metal pins instead. See id. vol. VIII, at 280-84.

Further, Mr. Woolard argued that Primeco failed to notify him or his employer about the need for an annual inspection, which would have revealed the defects. Mr. Woolard submitted evidence that, on March 7, 1996, just a few weeks before the lift collapsed, Young hired Primeco to service the lift. Primeco's field service mechanic, Philip Barker, traveled to Altus, Oklahoma and repaired an electrical switch that was malfunctioning. See id. vol. VII, docs. 60 and 68 (Primeco's field service report and billing invoice); vol. VIII, at 88, 91 (testimony of Phillip Barker). The repairman testified that the lift was in need of further repairs (in addition to the malfunctioning switch) and an annual inspection. He testified that in his opinion, even with the switch repaired, the lift should have been taken out of service. See Aplts' App. vol. VIII, at 105. However, he did not advise anyone of his opinions or observations. See id. at 94.

On this point, Mr. Woolard submitted evidence that the manufacturer, JLG,

7

advised that the lift be inspected annually and provided its distributors with maintenance manuals and annual machine inspection forms. See id. vol. VI, doc 18; vol. VII, doc. 24. Mr. Munsel testified that JLG's manual requires that, as part of an annual inspection, the sheave pins must be checked for excessive wear and that, had this been done, the worn pin would have been discovered and replaced. See id. vol. VIII, at 192-93. Further, Mr. Barker testified that to check the pins for wear, the inspector 'could physically look, pull and loosen the chain off and examine for wear and mold in them." Id. at 108; see id. at 95. Accordingly, Mr. Woolard argued that, had Primeco conducted an annual inspection or notified him or his employer of the need for an annual inspection or of the need for the boom's removal from service, the defective pins would have been discovered and the accident prevented.

Additionally, Mr. Woolard argued that Primeco breached a contractual duty to inform him and his employer that the lift was unsafe. Primeco was an authorized distributor for JLG, and the two were parties to the Distributor Agreement. The Distributorship Agreement provided, among other things, that Primeco "shall notify the owner and user of said product" if Primeco became aware that "any product is being improperly operated or that any Product requires maintenance or service for its continued safe operation." Id. vol. VII, doc. 32 at ¶ 11-A. Mr. Woolard contended that he and his employer, as "users," were third-

party beneficiaries of the Distributor Agreement between Primeco and JLG and, as such, Primeco had a duty to warn each of them of the need for further repairs and an annual inspection.

Mr. Woolard also argued that Young's negligence caused his injuries. He presented testimony from Charles Smith, a superintendent for Young, who stated that he knew that annual inspections were necessary. Mr. Woolard maintained that Young failed to perform the required inspections and failed to assure that these inspections were completed.

Primeco argued that it was not responsible for the accident. First, it presented evidence that the pins it installed during the overhaul were (1) new pins, (2) obtained from an authorized supplier of JLG parts, and (3) came with JLG tags attached. See id. vol. IX at 290-91, 305-06, 313-14, 525, 537. Primeco presented testimony that a purchaser of a manufacturer's authorized parts should not be required to verify that the integrity of the parts meets the manufacturer's standards. See id. at 525. Thus, Primeco argued, it fulfilled its duty by installing what it believed to be JLG-authorized parts.

In addition, Primeco submitted evidence that it could not have discovered the worn pins. Primeco's expert testified that because the pins were located on the inside of the frame of the boom, Mr. Barker's performing repairs on the electrical switch would not have revealed that the pins needed to be replaced. See

id. vol. VIII, at 89, 92. In addition, Primeco's expert testified that an annual inspection would not have revealed the worn pins either. According to the expert, an annual inspection would include an assessment of the functioning of the boom chain assembly and the telescoping of the boom. See id. at 82-83. Any wobble or play in one of the chain sheaves would alert the inspector of a problem warranting further inquiry by disassembling part of the boom. See id. at 82-83, 108-09. However, absent observation of such wobble or play, the inspector was not required to disassemble the boom to check the pins for wear.

Primeco also noted that the JLG owner's manual, as well as the American National Standards Institute ("ANSI"), which sets out the "industry standards," did not require or suggest a complete dismantling of the lift during an annual or periodic inspection. See id. vol. VI, doc. 17; vol. VIII, at 108, vol. IX, at 429-30, 437-38, 446-47, 452, 478-79, 492, 543. Finally, Primeco submitted evidence that the disassembly necessary to discover the pins would "inject" contamination into the parts and compromise the tolerance of the equipment. See id. vol. IX, at 543-44.

At the close of both the plaintiff's case and its own case, Primeco moved for judgment as a matter of law, arguing that it had not breached its duty to exercise ordinary care in repairing and maintaining the boom, that the Distributor Agreement did not impose additional duties upon Primeco, and that, even if

10

Primeco did have such a duty, the evidence failed to establish that Primeco's actions were the cause of the accident. In turn, the district court denied both motions.

The case was submitted to the jury, which found that Young was forty percent negligent, that Primeco was sixty percent negligent, and awarded Mr. Woolard $1.5 million in damages. Although Young had asserted cross-claims against Primeco seeking contribution or indemnification, the district court did not instruct the jury on those cross-claims. The jury thus made no findings regarding Primeco's liability, if any, to Young.

Primeco then filed a combined post-trial motion that moved for the following: a judgment as a matter of law, a new trial, and/or alteration of the judgment. In its motion for judgment as a matter of law, Primeco argued that it did not breach its duty to exercise ordinary care and that Primeco owed no duty to Mr. Woolard under the Distributor Agreement. In its motion for a new trial, Primeco argued that it was entitled to a new trial because: (1) even if Primeco had a legal duty to Mr. Woolard, the evidence failed to establish Primeco was the cause of the accident; (2) the evidence failed to support the jury's $1.5 million damage award (in the alternative arguing for a remittitur of damages consistent with the evidence); and (3) the jury was improperly instructed. Finally, Primeco argued that, if the district court denied these motions, Primeco was entitled to a set

off for the $300,000.00 JLG settlement.

The district court denied Primeco's motion for judgment as a matter of law and its motion for a new trial. However, the district court agreed that Primeco was entitled to a set off for the $300,000.00 settlement with JLG. Accordingly, the district court reduced the $1.5 million judgment to $1.2 million.

Young filed a motion analogous to Primeco's for an amendment of the entry of the judgment. In addition, Young sought a judgment as a matter of law and a new trial pursuant to Federal Rules of Civil Procedure 50 and 59 based on the trial judge's failure to instruct on its cross-claim. The district court amended the amount of the judgment, as noted above, and denied the remainder of Young's motions.

On appeal, Primeco argues that the district court erred in denying its motion for judgment as a matter of law and its motions for a new trial or remittitur. Mr. Woolard cross-appeals, arguing that the district court erred in calculating prejudgment interest under Oklahoma law. In addition, co-defendant Young, as cross-appellant, appeals on its cross-claims against Primeco. For the reasons set forth below, we affirm each of the district court's decisions, with the exception of its calculation of prejudgment interest; we remand this claim for recalculation in accordance with this opinion.

## II.    DISCUSSION

### A.    Primeco's appeal

On appeal Primeco argues that the district court should have granted its motion for judgment as a matter of law under Fed. R. Civ. P. 50(a)(1) and its motions for a new trial under Fed. R. Civ. P. 59.  In particular, Primeco advances four distinct challenges to the district court's denial of these motions.  It argues that the district court erred in concluding that:  (1) a reasonable jury could find that Primeco breached its duty to Mr. Woolard as a third-party beneficiary of the Distributor Agreement between Primeco and JLG; (2) a reasonable jury could also find that Primeco breached its common law duty of ordinary care to Mr. Woolard; (3) a reasonable jury could find that Primeco's acts were the proximate cause of Mr. Woolard's injuries; and (4) the $1.5 million damage award is supported by the evidence.  Primeco also argues that the district court erroneously altered an instruction before submitting the case to the jury.

When we review a district court's denial of a motion for judgment as a matter of law, federal law governs whether a judgment as a matter of law is appropriate.   See Brown v. McGraw-Edison Co.  , 736 F.2d 609, 612 (10th Cir. 1984).  When sitting in diversity, however, we apply the law of the forum state, in this case, Oklahoma.   See id. at 613.  A federal district court's state-law determinations are entitled to no deference and are reviewed de novo.      See Salve

13

<u>Regina College v. Russell</u>, 499 U.S. 225, 239 (1991). In reviewing the evidence presented to the district court, "we must determine whether there is evidence upon which the jury could properly find a verdict for the party against whom the motion is directed." <u>Magnum Foods, Inc. v. Continental Cas. Co.</u>, 36 F.3d 1491, 1503 (10th Cir. 1994).

As to Primeco's motion for a new trial, "[f]ederal law governs the granting or denial of a motion for a new trial in diversity actions in federal court." <u>Blanke v. Alexander</u>, 152 F.3d 1224, 1235 (10th Cir. 1998); <u>see</u> Fed. R. Civ. P. 59. On review, the trial court's decision to deny a motion for new trial will stand absent a showing of "a manifest abuse of discretion." <u>Blanke</u>, 152 F.3d at 1235. Our inquiry focuses on whether the verdict was "clearly, decidedly, or overwhelmingly against the weight of the evidence." <u>Id.</u> at 1236 (quotations omitted).

Mindful of these standards, we proceed to examine Primeco's arguments that it did not breach a contractual or common law duty. Then, we turn to its arguments regarding proximate cause and the amount of the damages award.

1. <u>Breach of Duty Arising under Contract</u>

Under Oklahoma law, to establish a claim based on negligence, the plaintiff must establish (a) the existence of a duty owed by defendant to plaintiff; (b) that the defendant failed to perform that duty; and (c) that the defendant's failure

14

caused the plaintiff injury.   See Krokowski v. Henderson Nat'l Corp.   , 917 P.2d 8, 11 (Okla. 1996).

Under the Distributor Agreement, Primeco agreed to provide a variety of services, including installation and inspection services.   Specifically, Primeco agreed "to promptly render installation and inspection service . . . with respect to all Products and Parts Sold to a customer . . . ." Aplts' App. vol. VII, doc 32, at ¶ 5.E.  The Distributor Agreement defines the "Installation and Inspection Services" to comprise: "Inspection, starting and testing . . . of Products and Parts, as specified in the applicable installation and inspection report forms, [illegible] to insure successful operation and resultant customer satisfaction. . . ." Id. ¶ 1.  This section suggests that Primeco's duty extended beyond simple installation of authorized parts and extended to its customers.

Oklahoma law provides that a tort may arise in the course of the performance of a contract and that tort may then be the basis for recovery even though it is the contract that creates the relationship between the parties.   See Hall Jones Oil Corp. v. Claro   , 459 P.2d 858, 861 (Okla. 1969).

> Conduct that is merely a breach of contract is, of course, not a tort. Nevertheless, a tort may arise in the course of the performance under a contract so that a breach of the contract may not be the gravamen of the action, but an intentional wrong may be.   The contract in such case is the mere incident creating the relation furnishing the occasion for the tort and giving rise to an action   ex delicto  . . . .  [It] is well established that, where a breach of contract is permeated with tort, the injured person may elect to waive the contract and recover in tort; or, differently stated,

15

> although the relation between the parties may have been established by contract, express or implied, if the law imposes certain duties because of the existence of that relation, the contract obligation may be waived <u>and an action in tort maintained for the violation of such imposed duties.</u>

<u>Id.</u> at 861-62 (citations omitted) (emphasis supplied).  Under these principles, the district court concluded that there was sufficient evidence that Primeco owed Mr. Woolard a duty, <u>ex delicto</u>, under the Distributor Agreement between JLG and Primeco because Mr. Woolard was a third-party beneficiary of the contract.

A person may sue for damages resulting from the breach of a contractual obligation, even though he was not a party to the contract and had no knowledge of it when it was made, if he was an intended beneficiary of that obligation.  <u>See Hesser v. Central Nat'l Bank & Trust Co.</u> 956 P.2d 864, 867 (Okla. 1998).  "It is not necessary that the party be specifically named as a beneficiary but only that the contract be made expressly for the benefit of a third person and expressly simply means in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." <u>Keel v. Titan Constr. Corp.</u>, 639 P.2d 1228, 1231 (Okla. 1981) (internal quotations omitted).

Whether an individual is a third-party beneficiary of a contract is determined by the intent of the contracting parties.  <u>See G. A. Mosites Co. v. Aetna Cas. & Sur. Co.</u>, 545 P.2d 746, 749 (Okla. 1976) (discussing the "necessity of finding the intent of the parties to the contract in determining whether a third-party beneficiary contract was created").  "When a contract is reduced to writing,

16

the intention of the parties is to be ascertained from the writing alone, if possible .. . ." Okla. Stat. Ann. tit. 15, § 155 (West 1993). Rules of construction and interpretation are available if an ambiguity is present, but where no ambiguity exists in the language used, we determine the intent of the parties from the words used. Frensley v. White, 254 P.2d 982, 985 (Okla. 1953).

Primeco argues that "it is obvious from the contractual language" that Primeco and JLG did not intend to benefit any third parties. Primeco's First Br. at 23. In support of its argument, Primeco asserts that Mr. Woolard is not directly mentioned in the Distributor Agreement.

After reviewing the Distributor Agreement, we agree with the district court that Mr. Woolard is expressly and unambiguously a third-party beneficiary of the contract and, as such, entitled to enforce the duty created thereunder. The relevant provision of the contract states:

> 11. Product Safety
>
> A. Distributor [Primeco] and JLG agree that product safety and improvement are goals to which each is committed. . . . As and to the extent that Distributor becomes aware that any Product is being improperly operated or that any Product requires maintenance or service for its continued safe operation, Distributor shall notify the owner and user of said Product of such and use its best efforts to have the owner and user of the Product contact the same.

Aplts' App. vol. VII, at doc. 32, at ¶ 11.A.

It is clear from this provision that the parties intended the owners and users

17

of JLG products to be a beneficiary of Primeco and JLG's commitment to safety. The Distributor Agreement expressly states terms that the distributor "shall notify the owner and user" if it is aware that a JLG product requires maintenance or service. Id. It is undisputed that Mr. Woolard and the company for which he was working at the time of the accident were users of the lift.

Primeco also argues that the Distributor Agreement's non-assignment clause, which states that Primeco's obligations under the agreement cannot be assigned, supports its argument that the contract conferred no third-party beneficiary status. The Distributor Agreement's non-assignment clause provides the following language:

> This Agreement shall be binding upon, and shall enure to the benefit of the parties and their respective heirs, successors, and assigns; provided, however that [Primeco]'s rights and obligations hereunder cannot be assigned, in whole or in part, directly or indirectly, by [Primeco], by operation of law or otherwise, to any person, firm or corporation without the prior written consent of JLG.

Id. ¶ 12.F.

Although the assignment of a contract will confer rights and obligations upon a third-party, the assignment is unrelated to one's status as a third-party beneficiary. The non-assignment clause serves to protect JLG and its successors from Primeco's unauthorized transfer of rights and obligations and does not speak to the intended third-party beneficiary status conferred upon Mr. Woolard in paragraph 11 of the Distributor Agreement.

18

2.    Breach of Common Law Duty

Regardless of the third-party beneficiary theory, there is another source of liability, that being Primeco's common law duty to exercise ordinary care. Aside from the provisions of the Distributor Agreement, Primeco also argues that the district court erred in concluding that a reasonable jury could properly find that it breached its common law duty to exercise ordinary care in maintaining and inspecting the lift. Primeco addresses both instances of alleged negligence identified by Mr. Woolard: (a) the 1990 overhaul of the lift, when Primeco's predecessor replaced the factory installed sheave pins with new pins; and (b) Primeco's failure to take the lift out of service and conduct an annual inspection after Mr. Barker repaired the electrical switch in March 1996.

According to Primeco, it did not breach its duty to Mr. Woolard on either occasion. Primeco maintains that, in 1990, its predecessor-in-interest installed proper replacement pins in the lift, and that, in March 1996, its repairman exercised ordinary care in repairing the electrical switch. As to the latter instance of alleged negligence, Primeco acknowledges that it did not take the lift out of service or conduct an annual inspection. However, it maintains that an annual inspection would not have revealed the defect in the pins.

Under Oklahoma law, "the existence of a duty depends on the relationship

between the parties and the general risks involved in the common undertaking." Wofford v. Eastern State Hosp., 795 P.2d 516, 519 (Okla. 1990). "Whether a defendant stands in such relationship to a plaintiff that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff is a question for the court." Id.

In the context of performing repairs, "one who is paid to repair [chattels] owes a duty of care to both the owner . . . and to the general public to assure that the repair is properly performed or the owner is warned of its dangerous condition, where the dangerous condition is discoverable in the exercise of ordinary care." Delbrel v. Doenges Bros. Ford, Inc., 913 P.2d 1318, 1322 (Okla. 1996). "[A] repairer of chattels has a duty to exercise reasonable care not to cause bodily harm to one whose person or property might reasonably be expected to be endangered by probable use of the chattel after repair." Stuckey v. Young Exploration Co., 586 P.2d 726, 730 (Okla. 1978). This duty includes not only "perform[ing] the repair properly, but also the duty to inspect and test the [chattel] in order to determine whether [it] could be operated without danger to plaintiff and the public." Id.; see Barnhart v. Freeman Equip. Co., 441 P.2d 993, 997 (Okla. 1968) ("'One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of

chattels.'") (quoting Restatement of Torts § 404).[1]

Importantly, that duty "to inspect and test" the chattel, see Stuckey, 586 P.2d at 730, is not unlimited.  If the repairer of chattels uses materials provided by a manufacturer or an employer, he or she may not be held liable for injuries caused by defects in the materials unless those defects are obvious.  As the Restatement explains:

> Indeed, chattels are often made by independent contractors from materials furnished by their employers.  In such a case, the contractor is not required to sit in judgment on the plans and specifications or the materials provided by his employer.  The contractor is not subject to liability if the specified design or material turns out to be insufficient to make the chattel safe for use, unless it is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe. The same is true in regard to materials furnished by the employer.

Restatement (Second) of Torts (1965) § 404 cmt. a.  Our sister circuit has noted, "it would . . . be a singular doctrine" if we were to hold that an installation contractor had a duty to inform its customers that there might be some defects in the equipment, "'in the absence of circumstances whereby any dangerous defects were known or readily foreseeable by a reasonably prudent contractor.'" Ackerman v. York Corp., 260 F.2d 1, 6-7 (8th Cir. 1958) (quoting the district court) (affirming district court's denial of plaintiff's motion for a new trial where

---

[1]  The Restatement (Second) of Torts § 404 provides the identical language.

jury found that installation contractor had no duty to dismantle the employer-supplied equipment "in order to determine whether the equipment was in any way inadequate for the purposes for which it was to be used").

Applying these principles, we first conclude that the district court properly ruled that a jury could reasonably find that Primeco breached its duty of ordinary care to Mr. Woolard when its predecessor conducted the overhaul of the lift in 1990. Although Primeco offered evidence that its predecessor replaced the original pins with JLG-authorized pins, Mr. Woolard presented evidence to controvert Primeco's contentions. In particular, Mr. Woolard presented expert testimony that one of the sheave pins installed by Primeco's predecessor was made of an inferior chrome-plated soft metal rather than the authorized hardened steel. According to Mr. Woolard's expert, the difference between a proper hardened steel pin and a soft metal pin was visually obvious. Relying on this testimony, a jury could reasonably conclude that Primeco's predecessor failed to exercise ordinary care by installing a defective sheave pin in the lift.

We reach a similar conclusion as to Primeco's failure to conduct an annual inspection after repairing the electrical switch in March 1996. As noted above, Primeco did present evidence suggesting that during an annual inspection, disassembly of the lift was not required. According to Primeco's witnesses, an inspector would test the sufficiency of the pins by assessing the functioning of the

boom. Primeco's evidence indicated that, because its mechanic observed no obvious wobble or play in the chain sheaves after he repaired the electrical switch, an annual inspection (if conducted prior to the accident) would not have led the inspector to disassemble the lift and discover the defective pin.

However, Mr. Woolard presented substantial evidence to rebut Primeco's theory of the scope of an annual inspection. In particular, JLG's Annual Machine Inspection Report requires that an inspector check all "pins, shafts, bearings . . . chains and sprockets (or sheaves) for proper installation, tightness, excessive wear, cracks or distortion." Aplts' App. vol. VII, doc 24 (emphasis added). JLG's operating manual provided similar instructions. See id. vol. VI, doc 17, at 1860 ("Check . . . pins for damage or excess wear."). In addition, Primeco's mechanic testified that to check the pins for wear, they would need physical examination. Contrary to Primeco's theory, the Report does not explain that such inspection of the pins should be done indirectly -- i.e. by checking the functioning of the boom. This evidence is sufficient for the jury to have concluded that an inspection, required by the JLG Annual Inspection Report and the JLG maintenance manual, would have revealed the excessively worn sheave pin.

The record thus supports the inference that Primeco owed Mr. Woolard a duty "as a person who could foreseeably be injured by [its] negligent failure to repair or warn against a dangerous condition concerning the [lift]." Delbrel, 913

23

P.2d at 1321.  Accordingly, we conclude that the district court properly interpreted the scope of Primeco's common law duty to Mr. Woolard in denying Primeco's motions for judgment as a matter of law and for a new trial.

3.      Proximate Cause

Primeco also contends that, even if the jury could have properly found that it breached its duties to Mr. Woolard under the Distributor Agreement and the common law, the evidence is still insufficient to support the conclusion that Primeco's breach of those duties proximately caused the accident.  In particular, Primeco argues that:  (1) Primeco was not a proximate cause of Mr. Woolard's injuries because an annual inspection would not have revealed the defective pin, and (2) Young (rather than Primeco) was the proximate cause of those injuries because Young knew of the need for annual inspections and allowed the lift's continued use.

Under Oklahoma law, a proximate cause is defined as one that, "'in the natural and continuous sequence, produces [the plaintiff's] injury and without which the injury would not have happened.'"      Dirickson v. Mings  , 910 P.2d 1015, 1018-19 (Okla. 1996) (quoting     Tomlinson v. Love's Country Stores    , 854 P.2d 910, 916 (Okla.1993)).  A plaintiff's injury may have more than one proximate cause. See Kirkpatrick v. Chrysler Corp.    , 920 P.2d 122, 126 (Okla. 1996) ("Tortfeasors

24

are classified as concurrent tortfeasors when their independent acts concur to produce a single or indivisible injury."); Sears, Roebuck & Co. v. Huang, 652 A.2d 568, 573 (Del.1995) ("Multiple defendants may be liable as joint tortfeasors if each defendant's negligence is found to be a proximate cause of a plaintiff's injury."). Applying that definition, we are not persuaded by Primeco's arguments regarding proximate cause.

The first of these arguments—that an annual inspection would not have revealed the defective pin in the lift—reprises the same points advanced by Primeco in challenging the evidence regarding the breach of its duties to Mr. Woolard. For the reasons set forth above, we conclude that the jury could have reasonably rejected Primeco's contention that an annual inspection would not have revealed the defective pin. In light of the additional evidence presented by Mr. Woolard (that Primeco's predecessor installed the defective pin, that Primeco had a duty under the Distributor Agreement to inform the lift's owner and user of the need for maintenance or service and that Primeco knew of the need for an annual inspection but did not perform one), the record supports the inference that Primeco proximately caused Mr. Woolard's injuries.

Primeco's second proximate cause argument—that Young rather than Primeco was the proximate cause of Mr. Woolard's injuries—is based on the testimony of Mr. Charles Smith, a superintendent for Young, who testified that he

25

knew annual inspections were necessary. Mr. Smith explained that on the date Young took possession of the lift in 1993, he assumed all necessary annual inspections had been performed, although he did not request any documents supporting this. In light of this testimony, Primeco maintains that it is relieved from liability because the defect or hazard was already known. See Pickens v. Tulsa Metro. Ministry, 951 P.2d 1079, 1088 (Okla. 1997).

Primeco's argument is undermined by the principle that an injury may have more than one proximate cause. See Kirkpatrick, 920 P.2d at 126; Sears, Roebuck & Co., 652 A.2d at 573. Thus, even if Young did know about the need for annual inspections, the actions by both Primeco and Young could have been a proximate cause of Mr. Woolard's injuries. That conclusion is further supported by the terms of the Distributor Agreement, which requires the distributor (Primeco) to notify "the owner [i.e. Young] and user [i.e. the employer and Mr. Woolard]" of maintenance and service requirements. See Aplts' App. vol. VII, doc. 32, at ¶ 11.A.

Accordingly, the district court did not err in rejecting these proximate cause arguments in denying Primeco's motions for judgment as a matter of law and for a new trial. [2]

_____

[2] Primeco also submits that application of Oklahoma's "accepted work doctrine" relieves Primeco of liability. The "accepted work doctrine," which

(continued...)

26

emanated from the English case   Winterbottom v. Wright  , 10 M&W 109, 11 L.J. Ex. 415, 152 Eng. Rep. 402 (1842), requires privity of contract for a party to sue on a claim of breach of a duty arising out of the contract.      See Pickens , 951 P.2d at 1087.  In the independent contractor arena, the doctrine specifically provides that:

> an independent contractor who has turned over his work and had it accepted by the owner is not subject to liability to third parties injured by the defective condition of the work.  Liability if any, is placed on the owner who has maintained or used the property in its defective condition . . . .

Id. at 1088.

Primeco should know that this doctrine has largely been abandoned by Oklahoma courts in contractor liability cases in favor of Justice Cardozo's opinion in  MacPherson v. Buick Motor Co.   , 111 N.E.1050 (N.Y. Ct. App. 1916), which held that a manufacturer of an automobile is liable to a third person, namely the owner of the vehicle who had purchased it from an independent dealer, for his injury resulting from the collapse of a negligently constructed wheel of the automobile.  Almost without exception, the      MacPherson  doctrine has been extended to repairers of chattels.      See Barnhart , 441 P.2d at 998 (noting cases and citing with approval the doctrine that "he who repairs a chattel is bound to exercise reasonable care not to cause bodily harm or damage to one whose person or property may reasonably be expected to be endangered by the probable use of the chattel after the making of the repair"      ); Pickens , 951 P.2d at 1088 (noting that "absence of privity of contract will not bar an injured third-party from recovering damages for injuries received as a result of a contractor's negligent work");   St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.    , 782 P.2d 915, 919 (Okla. 1989) (stating that in 1961 the Oklahoma Supreme Court applied the modern  MacPherson  doctrine that "'no privity of contract is essential to support liability for negligence in respect of acts or instrumentalities which are imminently dangerous.  The liability in such instances . . . depends merely on the duty of every man to act so as not to injure the persons or property of others.'") (quoting  Leigh v. Wadsworth  , 361 P.2d 849, 852 (Okla. 1961)).

Moreover, even if the accepted work doctrine's demise has been exaggerated, a well-established exception is applicable here.

(continued...)

4.    Damages

Primeco maintains that the damage award of $1.5 million to Mr. Woolard is excessive and contrary to the evidence and that the district court abused its discretion in denying Primeco's motion for a new trial and its alternative motion for a remittitur.  "Federal law governs the decision whether a remittitur should be granted in a diversity case.  'Under federal law, whether the trial court properly refused to grant remittitur or a new trial on the ground of an excessive damage

---

[2](...continued)
"[W]here the contractor has wilfully created a condition which he knows, or by the exercise of ordinary diligence should have known, to be immediately and certainly dangerous to persons other than the contractee, who will be necessarily exposed to such danger, considerations of public policy do not require the application of the general [accepted work doctrine] rule."

Creamer v. Bucy, 700 P.2d 668, 670-71 (Okla. Ct. App. 1985) (quoting Schlender v. Andy Jansen Co., 380 P.2d 523, 524 (Okla. 1963)).    See Greenwood v. Lyles & Buckner, Inc.  329 P.2d 1063, 1065 (Okla. 1958) (holding that the doctrine does not apply where contractor's wilful negligence creates a condition that he knows to be "immediately and certainly dangerous to [third] persons . . . who would necessarily be exposed to [the] danger").  As noted above, there is sufficient evidence in the record to support the jury's conclusion that had Primeco exercised ordinary diligence while providing the Installation and Inspection Services under the Distributor Agreement, Mr Woolard would not have been exposed to the dangerous condition of the lift.

.

award is tested by an abuse of discretion standard.'" K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1162 (10th Cir. 1985) (citation omitted) (quoting Garrick v. City & County of Denver, 652 F.2d 969, 971 (10th Cir. 1981)). Absent an award that shocks the judicial conscience or raises an irresistible inference that passion, prejudice, corruption or other improper cause played a part in the jury's damage award, we will not disturb the jury's damage award. See Blanke, 152 F.3d at 1236; see also Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett, 24 F.3d 136, 142 (10th Cir. 1994).

Here, the record supports the jury's verdict. Mr. Woolard presented evidence that his medical bills totaled nearly $100,000.00. His future estimated medical expenses would be in the range of about $35,000.00. The record indicates that his loss of past and future earnings totaled nearly $300,000.00. Mr. Woolard's counsel sought an additional $410,000.00 for pain and suffering and another $410,000.00 for Mr. Woolard's permanent physical impairment. Damages for pain and suffering are not susceptible to proof by a specific dollar amount, and accordingly, the jury has wide discretion in rendering a particular amount. See Blanke, 152 F.3d at 1237. Although the jury's verdict of $1.5 million exceeds the amount that Mr. Woolard sought, "[b]ased on h[is] injuries, the necessary medical procedures, h[is] probable need for future medical attention, the limitations on h[is] activities, and the pain []he has experienced, we cannot say that the jury's

29

verdict for [Mr. Woolard] was clearly, decidedly, or overwhelmingly against the weight of the evidence." Id. In fact, when the JLG settlement is taken into account, the jury's verdict amounted to what plaintiff's counsel sought–approximately $1.2 million. As such, "we do not find the award to be so excessive as to raise an irresistible inference of passion, prejudice, or other improper cause." Id. We hold that the district court did not manifestly abuse its discretion in denying Primeco's motion for a new trial or a remittitur.


5.     Jury Instructions

Primeco also argues that the district court erroneously altered a jury instruction prior to the case's submission to a jury. "When deciding whether a possible error in a jury instruction mandates reversal, 'we review the record as a whole to determine whether the instructions state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable.'" Comcoa v. NEC Tels., Inc., 931 F.2d 655, 661 (10th Cir. 1991) (quoting Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 (10th Cir. 1988) (internal quotations omitted)).

After closing arguments and while the district court judge was instructing the jury, Mr. Woolard objected to instruction 17 and its corresponding verdict

form B.[3]  Mr. Woolard argued that the jury form was fundamentally incorrect because it instructed the jury that if it found one defendant liable, but not the other, the jury must find in favor of both defendants.

Young disagreed, arguing that the jury instruction was correct and that Mr. Woolard had waived any objection to the wording of the instruction.  Further, Young argued that the proposed change would have removed the possibility of the

---

[3]  Instruction 17 originally stated:

> If you find that the plaintiff's injuries were directly caused by the contributory negligence of plaintiff, and not by any negligence on the part of the defendants, or, if you find that plaintiff has failed to <u>prove that either one or both defendants were negligent</u>, then you shall use Section "B" of the verdict form and <u>find in favor of both defendants</u>.
> In this connection you are advised that no specific finding need be made by you as to JLG and/or Young Electric, since they are not parties to this lawsuit.

Aplts' App. vol. II at 365 (emphasis supplied).  The relevant verdict form originally stated:

> USE THIS SECTION "B" ONLY IF you find that the plaintiff's damages were directly caused by his own contributory negligence or if you find that <u>plaintiff has failed to prove that defendants Young Enterprises and/or Primeco, were negligent, or if you find that plaintiff's damages were directly caused by the acts of non-parties JLG and/or Young Electric.</u>   Under this section, you need not make a specific finding as to any negligence of a non-party.

Id. at 364 (emphasis supplied).

31

jury finding that JLG or Young Electric was the cause of the accident. Primeco

similarly objected. The district court overruled the objection and adopted Mr.

Woolard's proposed changes. [4]

Primeco, who joined Young in objecting before the district court, raises

similar arguments on appeal: (1) that the amendment to the jury instruction was

incorrect; and (2) that because the change to the instruction followed closing

arguments, Primeco was deprived of an opportunity to adequately focus the jury on

---

[4] As amended, Instruction 17 stated:

> If you find that plaintiff's injuries were directly caused by the contributory negligence of plaintiff, and not by any negligence on the part of the defendants, or, if you find that <u>plaintiff has failed to prove that both defendants were negligent</u>, then you shall use Section "B" of the verdict form and find in favor of both defendants.
> In this connection you are advised that no specific finding need be made by you as to JLG and/or Young Electric, since they are not parties to this lawsuit.

<u>Id.</u> vol. I at 241 (emphasis supplied). The revised verdict form provided:

> USE THIS SECTION "B" ONLY IF you find that the plaintiff's injuries were directly caused by the contributory negligence of plaintiff, and not by any negligence on the part of the defendants Young Enterprises and Primeco, or, if you find that <u>plaintiff has failed to prove that both defendants were negligent</u>. In this connection you are advised that no specific finding need be made by you as to JLG and/or Young Electric, since they are not parties to this lawsuit.

<u>Id.</u> at 247 (emphasis supplied).

the liability of the nonparties.

When we view the instructions as a whole, particularly in conjunction with their relevant verdict forms and with the direct cause instructions, we note that Primeco could still argue, and in fact did argue, that the nonparties were the direct cause of the accident and injuries. See Aplts' App. vol. IX, at 652 (Primeco's closing argument) ("A broken bolt, JLG; failure to grease, Young Electric. . . . [I]f in fact, . . . [Primeco], were the two pieces of bread, then there is only one piece of meat between them, and that's JLG."); vol. I at 236 (Jury Instruction No. 13) ("Defendants Young Enterprises and Primeco claim that the negligence of JLG . . . and Young Electric . . . was the direct cause of plaintiff's damages, or at least had some causal connection with them."). Similarly, even though the verdict forms did not require specific findings as to the liability of nonparties, the instructions and verdict forms provided the jury with ample opportunity to conclude that the nonparties were the negligent parties. Our review of the jury instructions indicates that the instructions adequately reflect the law and do not provide grounds for reversal.

As to the timing of the changes to the instructions and the verdict form, we note that it would have been preferable for the district court to have made these changes before closing arguments. However, Primeco has failed to establish that it suffered any prejudice as a result of this eleventh-hour amendment. Because

33

Primeco's attorneys adequately presented its defenses to the jury, the fact that the district court made the subject changes after closing argument does not entitle Primeco to a new trial.

**B.      Mr. Woolard's Cross-Appeal     for Recalculation of Prejudgment     Interest**

Mr. Woolard's cross-appeal questions the district court's calculation of prejudgment interest. The district court granted Mr. Woolard's motion for prejudgment interest under Okla. Stat. tit. 12, § 727. The district court also granted motions by Primeco and Young to amend the judgment to reflect the offset of Mr. Woolard's pretrial settlement with JLG, pursuant to Okla. Stat. tit. 12, § 832. In its calculation of prejudgment interest, the district court determined that the calculation should be based on the reduced amount of $1.2 million. Mr. Woolard contends that the district court erred in failing to include the $300,000.00 in its calculation of prejudgement interest.

Generally, we will uphold a district court's award of prejudgment interest absent an abuse of discretion. See Driver Music Co. v. Commercial Union Ins. Cos., 94 F.3d 1428, 1433 (10th Cir. 1996). We review "any statutory interpretation or legal analysis underlying such an award . . . de novo. Id. We hold that the district court erred in its calculation of prejudgment interest on the reduced verdict.

Section 727(E) of Title 12 provides that in personal injury actions, " the court in rendering judgment shall add interest on the verdict      at a rate prescribed . . .

from the date the suit resulting in the judgment commenced . . . ." Okla. Stat. Ann. tit. 12, § 727(E) (emphasis supplied). We have previously considered setoffs in the context of an analogous Oklahoma statute, Section 3629(B) of Title 36. Section 3629(B) addresses the award of prejudgment interest in an insurance context: "[i]f the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable . . . ." Okla. Stat. Ann. tit. 36, § 3629(B) (emphasis supplied). In Driver, we recognized that an award of prejudgment interest based on the entire verdict comports with Section 3629(B)'s express command to add interest "on the verdict." 94 F.3d at 1434; Okla. Stat. Ann. tit. 36, § 3629(B). Section 727(E) of Title 12 provides the identical command.

However, several Oklahoma decisions have indicated that the statutory provision that interest should be awarded on "the verdict" does not foreclose the deduction of amounts received in settlement before the interest calculation is made. For example, in Landrum v. National Union Ins. Co., 912 P.2d 324, 329 (Okla. 1996), the Oklahoma Supreme Court affirmed a lower court decision deducting the entire prelitigation settlement amount prior to calculating prejudgment interest, reasoning that to allow a plaintiff to retain the prejudgment interest that accrued on a settlement payment received before litigation ensued would be to allow a plaintiff a windfall. See also Baker v. Barnes, 949 P.2d 695, 697 (Okla. Ct. App. 1997)

35

(similarly affirming the deduction of the entire pre-litigation settlement before calculating prejudgment interest). The purpose of prejudgment interest is to make the plaintiff whole by repayment of interest for loss of use of the money to which the plaintiff was entitled. See id. Awarding a party prejudgment interest on amounts that he has already received from a settling party is not necessary to compensate the plaintiff for this loss of use.

Here, we may harmonize the statute's language with Oklahoma's authoritative application of the statute. In this case, Mr. Woolard received no pre-litigation benefit from the JLG settlement. See id. Mr. Woolard entered the settlement agreement approximately one month before the trial in this case, and subsequently received the settlement payment.

To deduct the $300,000.00 JLG settlement amount in full before calculating prejudgment interest appears to be prohibited from the plain language of Section 727(E), which requires calculation of prejudgment interest on the entire verdict. To award interest on the entire verdict, however, would do more than simply compensate Mr. Woolard for the loss of the use of funds between the filing of the suit and the entry of the judgment. See Landrum , 912 P.2d at 329.

We agree with the Second Circuit's reasoning in In re Joint E. Dist. & S. Dist. Asbestos Litig. (Bauman v. Keene Corp.) , 18 F.3d 126, 132 (2d Cir. 1994) ("Bauman "), where the court affirmed the district court's calculation of

36

prejudgment interest before the reduction of any settlement amounts. The <u>Bauman</u> court provided a helpful formula to take into account the timing of any settlement payments to avoid potential double recovery by the plaintiff. First, it converted the settlement amount to judgment-time dollars, using the same legal rate of interest that is used in calculating prejudgment interest on the compensatory damages portion of the verdict. Second, it subtracted the adjusted settlement figure from the adjusted compensatory damages figure. [5] <u>See</u> <u>id.</u> This method harmonizes the

---

[5] There, the court's formula was:

(1) Add to each settlement hypothetical interest at the prejudgment interest rate from the time of the settlement until the time of the judgment. This interest is hypothetical because it is added to the settlement for calculation purposes only. This step converts each settlement into judgment-time dollars.

(2) Aggregate the resulting amounts (settlements plus hypothetical interest).

(3) Add prejudgment interest to the verdict.

(4) From the total arrived at in step 3, subtract the greater of either (a) the aggregate of the settlements converted into judgment-time dollars (the result from step 2), or (b) the settling defendants' total equitable shares of liability including prejudgment interest (i.e., the percentage of liability attributed by the factfinder to all settling defendants, in the aggregate, multiplied by the result from step 3 (i.e., the verdict increased by prejudgment interest)).

(5) The amount arrived at in step 4 is the amount of the judgment against the nonsettling defendant.

(continued...)

37

statute's plain language and the Oklahoma Supreme Court's interpretation of the legislative intent of Section 727(E), that is to compensate plaintiffs by giving them the benefit of prejudgment interest on their compensatory damage awards and to give the defendants the benefit of setoff of previously settled claims.      See id.; Landrum , 916 P.2d at 329.

Accordingly, we reverse the district court's calculation of prejudgment interest and remand to the district court for recalculation of the judgment by (1) adding prejudgment interest at the legal rate to the entire verdict pursuant to Section 727; (2) adding interest at the legal rate to the settlement sum from the date of the receipt of the settlement payment made until the date of judgment; and (3) subtracting the second calculation from the first to determine the amount owed to Mr. Woolard.

**C.      Young Enterprises's Appeal of its Cross-Claims Against Primeco**

Young argues that the district court erred in refusing to give its proposed instructions regarding its cross-claims against Primeco and seeks a directed verdict or a new trial.   The district court's decision whether to give a particular jury instruction is within its sound discretion, while we review its legal conclusions de

---

[5](...continued)
18 F.3d at 132-33.

novo.  See City of Wichita v. United States Gypsum Co. , 72 F.3d 1491, 1495 (10th Cir. 1996).  Further, Young is entitled to an instruction based on its theory of the case if it has produced appropriate evidence to support it.  See Wilson v. Union Pac. R.R. Co. , 56 F.3d 1226, 1230 (10th Cir. 1995).  "[W]e review the record as a whole to determine whether the instructions 'state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable.'"  Big Horn Coal Co. , 852 F.2d at 1271 (quoting  Ramsey v. Culpepper , 738 F.2d 1092, 1098 (10th Cir. 1984)).

Young's cross-claims against Primeco sought indemnification and/or contribution for any and all claims asserted by Mr. Woolard against Young. Young's theories are threefold:  (1) that it was entitled to an instruction regarding strict product liability indemnity; (2) that as a third-party beneficiary of the Distributor Agreement it was entitled to an instruction regarding Primeco's breach of its duties to Young under the Distributor Agreement; and (3) that it was entitled to a supervening cause instruction stating that Primeco's awareness of the need for an inspection of the lift within a month of the accident supervened any previous failure of Young to properly inspect the lift.

Primeco responds that Young's settlement agreement with Mr. Woolard precludes it from pursuing this appeal of its cross-claims.  It also contends that Young asserts no recognized right to indemnity, that Young is not a third-party

39

beneficiary of the Distributor Agreement, and that Young's requested supervening cause instruction is incongruent with the jury's comparative negligence finding.

Before addressing its specific theories, we note that we agree with Young that its settlement with Mr. Woolard does not bar Young's appeal. The order dismissing all claims between Mr. Woolard and Young explicitly states that "[a]ll claims . . . as between Young and Primeco remain active on appeal." Dist. Ct. Order (filed July 29, 1998) at 4. Young is not attacking the jury verdict, as Primeco suggests. The cases on which Primeco relies do not estop Young from appealing the district court's refusal to instruct on Young's cross-claim. However, Young's settlement with Mr. Woolard does impact its ability to seek contribution, as discussed below.

1.    Strict Product Liability

We begin with Young's argument that the district court erred in refusing to instruct the jury on its claim for indemnification or contribution against Primeco on a product liability theory. Young maintains that Primeco supplied it with a defective product because the lift's design was flawed and because it contained an improper sheave pin that caused the eyebolt to fail. According to Young, those deficiencies render Primeco strictly liable as the seller of the lift for damages incurred by Young. As damages, Young identifies the jury verdict obtained by Mr.

40

Woolard (finding Young forty percent responsible for $1.5 million in damages) and the subsequent $400,000.00 settlement that Young made with him. We will first discuss Young's indemnification claim. Then, we will address its claim for contribution.

Under Oklahoma law, indemnity may arise out of an express contractual provision. Okla. Stat. Ann. tit. 15, § 421 (stating that "[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person"). Alternatively, "'[n]oncontractual or equitable indemnity'" may arise from a legal relationship between the parties. National Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc., 784 P.2d 52, 54 (Okla. 1989) (quoting Travelers Ins. Co. v. L.V. French Trucking Serv., Inc., 770 P.2d 551, 555 n.16 (Okla. 1988)); see also Restatement of Restitution § 76 (1937) ("A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."). Here, Young invokes noncontractual indemnity. The "legal relationship" on which it relies is the one between the buyer and the seller of a dangerous product.

Under a strict liability theory, a party who has a role in the distribution of a product may seek indemnity from the entity from which it purchased the product.

See Booker v. Sears Roebuck & Co., 785 P.2d 297, 298 (Okla. 1989) (stating that under Oklahoma law, "a manufacturer may be found to have a duty to indemnify its dealer against claims for loss caused by the manufacturer's defective product"). Nevertheless, there are important limitations on this right to indemnity. In particular, Oklahoma courts have repeatedly held that a party whose negligence has proximately caused the injuries in question may not seek equitable indemnification from a third party who has also proximately caused those injuries. See National Union Fire Ins. Co., 784 P.2d at 54-55 (stating the general rule that "one without fault, who is forced to pay on behalf of another, is entitled to indemnification" and that "'no right of indemnity exists on behalf of either [negligent defendant] against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent that the other'") (quoting Sirianni v. Nugent Bros., Inc., 506 A.2d 868, 871 (Pa. 1986) (emphasis added)); Travelers Ins. Co., 770 P.2d at 555 n.16 (stating the principle of equitable or implied indemnity as "one who is only constructively or vicariously obligated to pay damages because of another's tortious conduct may recover the sum paid from the tortfeasor") (emphasis added); Braden v. Hendricks, 695 P.2d 1343, 1349 (Okla. 1985) (stating that Oklahoma law "does recognize a right of indemnity when one–who was only constructively liable to the injured party and was in no manner responsible for the harm–is compelled to pay damages because of

42

the tortious act by another")    (second emphasis added)

Here, Young cannot be characterized as a party "in no manner responsible for the harm."   Braden , 695 P.2d at 1349.  As we have noted, the jury found that Young's negligence proximately caused forty percent of Mr. Woolard's injuries. That finding is supported by evidence in the record.  The jury evaluated and apparently gave substantive weight to testimony that Young's mechanic (1) did not inspect the lift upon receipt, (2) knew that annual inspections were required under the JLG manual, under ANSI standards, and OSHA regulations, and (3) did not seek paperwork evidencing that Primeco or another party had performed such inspections.  Although there was evidence that an annual inspection required inspection of the pins, Young's mechanic testified that the inspections that Young or Primeco performed did not include disassembly of the boom.       Accordingly, in asserting its strict liability indemnity claim against Primeco, Young seeks to recover damages caused by its own negligence.

In its appellate brief, Young invokes decisions from other jurisdictions allowing a negligent party to recover indemnity on a products liability claim.       See Young's Br. for Cross-Appellant at 24-25 (noting that "[c]ourts in other jurisdictions have allowed indemnification under circumstances where the downstream user fails to discover a defect in the product that they sold").  Young's argument is supported not only by the decisions that it cites but by several other

43

authorities. See, e.g., Restatement of Torts (Second) § 886B(d) (stating that an indemnitee is entitled to indemnity if "[t]he indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect") (emphasis supplied); Schneider Nat'l, Inc. v. Holland Hitch Co., 843 P.2d 561, 580, 582 (Wyo. 1992) (concluding that "Wyoming law permits an actor whose failure to inspect contributed to a third party's injuries to obtain indemnity from those who created or were otherwise directly responsible for the conditions that caused the third party's injuries" and that "[t]he failure of a product user to inspect and discover a defective product does not bar indemnity") (emphasis in original); Herndon v. Seven Bar Flying Serv., Inc., 716 F.2d 1322, 1332 (10th Cir. 1983) (stating that, under New Mexico law "a tort feasor . . . held proximately liable for its own negligence . . . in failing to discover and remedy a dangerous condition created by another . . . has been allowed indemnity").

However, other courts have disagreed, concluding (like the Oklahoma decisions set forth above) that a finding that a party has proximately caused the injuries in question precludes that party's claim for indemnity. See, e.g., Frazer v. A.F. Munsterman, Inc. 527 N.E.2d 1248, 1255 (Ill. 1988) (rejecting a party's claim for indemnity because "[i]t would be unfair for it to be able, through an action of implied indemnity, to shift the entire loss to the other defendants when its own

44

negligence contributed to cause the plaintiff's injury"); Kennon v. Slipstreamer, Inc., 794 F.2d 1067, 1073 (5th Cir. 1986) (noting that under Texas law "independently culpable" retailer cannot recover in product liability cases); Rabatin v. Columbus Lines, Inc., 790 F.2d 22, 26 (3d Cir. 1986) (where one concurrent tortfeasor produced a single harm, the court noted that indemnification claim against manufacturer based on strict liability "does not obtain" where equipment owner's "independent act of negligence," specifically, the failure to correct a known defect, was found to be a proximate cause of plaintiff's injuries); see generally Schneider, 843 P.2d at 583 n.17 ("We recognize that other jurisdictions have barred indemnity under strict liability when the party seeking indemnity is considered negligent or otherwise at fault in causing the injury.").

Although the issue is an important one, we need not here decide between these contrasting views. Under the Oklahoma law that we must apply, the jury's finding that Young was the proximate cause of forty percent of Mr. Woolard's injuries bars Young's claim to equitable indemnity from Primeco on a products liability theory. [6]

---

[6] We note that a different result might be warranted if Young's claim was based on a contractual provision. See Wallace v. Sherwood Constr. Co., 877 P.2d 632, 634 (Okla. Ct. App. 1994) (concluding that "[i[ndemnity agreements will not be construed to obligate the indemnitor to indemnify the indemnitee against losses arising from the indemnitee's own negligence unless the contract makes it unequivocally clear that that is what the parties intended") (quotations

45

Young's argument that it is entitled to recover under the related doctrine of contribution is also unpersuasive. Under Oklahoma law, a party who has been found jointly and severally liable in tort may be entitled to contribution. See Okla. Stat. Ann. tit. 12, § 832(A), (B) ("When two or more persons become jointly or severally liable in tort for the same injury to person . . ., there is a right of contribution among them . . . . No tort-feasor is compelled to make contribution beyond their pro rata share of the entire liability."). "The right of contribution exists only in favor of a tort-feasor who has paid more than their pro rata share of the common liability . . . ." Id. § 832(B). Contribution thus represents a sharing of joint and several liability by providing for proportional reimbursement from other parties who are liable to the plaintiff. See National Union Fire Ins. Co., 784 P.2d at 57 (determining that "pro rata" share and "proportionate" share are synonymous as to contribution).

Although before the case went to the jury, Young may have been entitled to a contribution instruction, Oklahoma's contribution statute allows only parties "who ha[ve] paid more than their pro rata share of the common liability" to seek contribution. Okla. Stat. Ann. tit. 12, § 832(B). Young's cross-claim cannot survive, because Young's settlement with Mr. Woolard was for an amount less than

[6](...continued)
omitted).

46

Young's pro rata share. In addition, under the statute, "[a] tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury . . . is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable." Id. § 832(D). As such, the district court's failure to instruct on Young's cross-claim for contribution under a strict liability theory does not require correction.

We therefore conclude that the district court properly denied Young's motions for a new trial and for judgment as a matter of law on its claims for products liability indemnity and for contribution.

2.      Cross-Claim for Breach of Contract

Young also argues that the district court erred in refusing to instruct the jury on its breach of contract claim against Primeco. For the same reasons we have set forth in discussing Young's claim for indemnity on a strict products liability theory, Young's argument is not supported by Oklahoma law. Although Young may avail itself of the Distributor Agreement's benefits and pursue its claims for breach of contract based on breach of warranty or other theories,      see Hesser, 956 P.2d at 867; Keel, 639 P.2d at 1231, it cannot seek equitable indemnity on a breach of contract theory for damages arising from its own negligence,      see Braden, 695 P.2d at 1349.

47

Like Young's product liability cross-claim, its cross-claim for breach of contact seeks damages that the jury found were proximately caused by Young's negligence. Accordingly, the district court properly denied Young's request to instruct the jury on this claim and properly denied Young's motion for judgment as a matter of law.

3.      Supervening Cause Instruction

Finally, Young contends that the trial court erred in refusing to instruct on supervening cause.  In particular, Young maintains that, because the district court did not give such an instruction, Young was deprived of the opportunity to argue that Primeco's conduct was a supervening cause of Mr. Woolard's injuries and that, as a result, Young should not be held liable for them.  We conclude that the district court did not abuse its discretion in declining to give Young's requested instruction and in denying its motion for a directed verdict.

Under Oklahoma law, "[i]f an unforeseeable event intervenes between the breach of duty, and that event directly causes the injury completely independent of the original breach, then the intervening cause becomes the supervening cause and breaks the causal nexus between the initial breach and the subsequent injury." Tomlinson 854 P.2d at 916.  The test to determine whether a supervening cause exists is whether the cause is (1) independent of the original act or omission, (2) adequate by itself to bring about the resulting harm to the plaintiff, and (3) not

48

reasonably foreseeable by the defendant. *See* Lockhart v. Loosen , 943 P.2d 1074, 1079 (Okla. 1997).

Upon review of the evidence presented at trial and the district court's instructions to the jury, we conclude that Young was given an adequate opportunity to advance its argument that Primeco was a supervening cause of Mr. Woolard's injuries. The jury was given instructions regarding direct cause, comparative negligence, concurrent tortfeasors, multiple defendants and the potential negligence of nonparties. The court's direct cause instruction stated that "[f]or negligence to be a direct cause it is necessary that some injury to a person in plaintiff's situation must have been a reasonably foreseeable result of negligence." Aplts' App. vol. I, at 234. Young argued to the jury that JLG, Primeco, Mr. Woolard's employer, and Mr. Woolard—rather than Young itself—caused Mr. Woolard's injuries. Although the jury found that Young's independent act or acts of negligence, along with Primeco's acts, were the proximate cause of Mr. Woolard's injuries, the jury could have concluded—had it assessed the evidence differently—that Primeco's acts "'intervene[d] so as to exclude the negligence of [Young] as one of the proximate causes of the injury.'" Rawl v. United States , 778 F.2d 1009, 1015 (4th Cir. 1985) (quoting Matthews v. Porter , 124 S.E.2d 321, 325 (S.C. 1962)).

Accordingly, we hold that the district court's refusal to give the supervening cause instruction requested by Young was not reversible error. *Cf.* In re Brooklyn

Navy Yard Asbestos Litig., 971 F.2d 831, 838 (2d Cir. 1992) (concluding that, in light of the trial court's causation instruction "the absence of a precise, emphatic instruction on superseding cause was at most harmless error"); Roggow v. Mineral Processing Corp., 894 F.2d 246, 248-49 (7th Cir. 1990) (concluding that in light of the proximate cause instruction given to the jury, the failure to give a superseding cause instruction was not error); Vasina v. Grumman Corp., 644 F.2d 112, 116 (2d Cir. 1981) ("the issue of 'intervening' and 'superseding' negligence was contained in the issue of proximate cause, and was adequately presented to the jury in the latter form"). Similarly, because the jury implicitly rejected Young's supervening cause argument, we reject Young's contention that it is entitled to judgment as a matter of law against Primeco in this cross-claim.

## III. CONCLUSION

We AFFIRM the district court's denial of Primeco's motion for a judgment as a matter of law and its motion for a new trial. We REVERSE the district court's calculation of prejudgment interest and we REMAND for recalculation. We AFFIRM the denial of Young's motion for judgment as matter of law and its appeal of the district court's refusal to grant instructions based on Young's claims for indemnification or contribution stemming from Primeco's product liability, breach of contract or supervening cause.

50