**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 15 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BONNIE SUE CRAIG,

      Plaintiff - Appellant,

v.

JAMES W. MURPHREE, M.D.,

      Defendant - Appellee,

  and

UNITED STATES OF AMERICA,

      Defendant.

No. 00-7134
(D.C. No. 99-CV-448-S)
(E.D. Oklahoma)

---

**ORDER AND JUDGMENT**  *

---

Before **KELLY** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

In this case, plaintiff Bonnie Sue Craig, a breast cancer patient, alleges that

---

\*     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

her radiologist, defendant James W. Murphree, negligently misinterpreted her mammograms as negative for indications of malignancy. Craig appeals the district court's denial of her motion for a new trial, which was based on the district court's refusal to give jury instructions regarding joint duty and concurrent causation theories. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse the district court's judgment and remand for further proceedings.

I

Craig, who has an extensive family history of breast cancer and breast lumps, was diagnosed with breast cancer in 1995 after the cancer had spread to her lymph nodes. The cancer developed in the same area that had been needle-biopsied by treating physician Dr. Hope Balluh in 1993 after Dr. Balluh felt a palpable mass there. Dr. Balluh was employed by the federal government at W.W. Hastings Indian Hospital. In 1994, a mammogram showed the presence of several micro-calcifications in that same area, which, according to Craig's experts, were clinically indicative of early cancer and merited further testing and evaluation.

Craig sued the United States for medical malpractice under the Federal Tort Claims Act. At trial, Craig presented expert testimony that Dr. Balluh negligently failed to properly biopsy the breast mass in 1993, negligently relied on a negative

needle biopsy, negligently failed to independently view the 1994 mammograms and order further testing based on the presence of micro-calcifications, and negligently failed in 1994 to order further tests to ascertain whether palpable fibrocystic changes in her left breast were malignant. (See Appellant's App. at 104–07.)

Craig also stated a claim against Dr. Murphree, a radiologist in private practice, for medical malpractice under state law. Craig alleged that Dr. Murphree negligently misinterpreted the 1994 mammograms as negative for indications of malignancy. Expert testimony supported her claim that Dr. Murphree breached the standard of care by failing to report the micro-calcification changes on the mammogram to Dr. Balluh and by failing to recommend or order further testing that could have conclusively ascertained whether those changes were malignant. (See id. at 73–74.) Furthermore, Craig presented expert testimony that, but for the failure to timely diagnose and treat the cancer, she would have had a greater than fifty percent chance of a complete cure and that the one-year delay of treatment until after metastasis of the cancer left her with the probability of not surviving more than ten years after its diagnosis.

At trial, the jury was instructed on, and decided only the issue of, Dr. Murphree's negligence, even though it heard almost all the evidence

-3-

regarding both Dr. Murphree's and Dr. Balluh's alleged negligence.[1]  On the issue

of Dr. Murphree's negligence, the court instructed the jury as follows:

> [Craig] has the burden of proving each of the following propositions:
> First, that she has sustained injury; and Second, that the party from
> whom she seeks to recover damage was negligent; and Third, that
> such negligence was a direct cause of the injury sustained by
> plaintiff.
>
> "Negligence" is the failure to exercise ordinary care to avoid causing
> damage to another.  "Ordinary care" is that degree of care which a
> reasonably careful person of the same age, capacity and experience
> would use under the same or similar circumstances.  The law does
> not say how a reasonably careful person would act under those
> circumstances.  That is for you to decide.  Thus, under the facts in
> evidence in this case, if a person failed to do something which a
> reasonably careful person would [] do, or did something which a
> reasonably careful person would not do, such person would be
> negligent.
>
> "Direct cause" means a cause which in a natural and continuous
> sequence produces injury, and without which the injury would not
> have happened.  For negligence to be a direct cause, it is necessary
> that some injury to the person in plaintiff's situation must have been
> a reasonably foreseeable result of negligence.
>
> As used in these instructions, the term "injury' means a loss, harm,
> damage or an impairment to the person of the plaintiff, directly
> caused by the negligence of defendant.
>
> A physician who holds himself out to be a specialist in a particular
> field of medicine owes to his patient the duty of possessing and using
> that degree of learning and skill ordinarily possessed and used by
> other specialists of good standing in the same special field under
> similar circumstances.  This is a higher degree of learning and skill

---

[1]     The district court denied Craig's request for an advisory jury verdict on Dr.
Balluh's negligence.

than that of a general practitioner. A physician who holds himself out to be a specialist impliedly guarantees that he will use ordinary care in the exercise of his skill and the application of his knowledge and experience to accomplish the purpose for which he is employed, and that he will use his best judgment in the exercise of his skill in diagnosing the condition and in treating the patient. He does not guarantee a cure and is not responsible for the lack of success, unless that lack results from his failure to exercise ordinary care, or from his lack of ordinary learning, skill, and experience.

If you find the plaintiff . . . proved all the essential elements of her negligence cause of action against the defendant, James Murphree, MD then your verdict shall be for the plaintiff . . . .

(Id. at 29–31.)

Craig proffered two additional uniform jury instructions on the issues of concurrent causation and joint duty of care. The concurrent causation instruction provided: "There may be more than one direct cause of an injury. When an injury is the result of the combined negligence of two or more persons, the conduct of each person is a direct cause of the injury regardless of the extent to which each contributes to the injury." Okla. Unif. Jury Instructions Civil 2d No. 9.7 (1996). The proposed joint duty instruction stated: "Where two or more physicians owe the same duty to a patient, and the acts of each contribute to the same breach of duty, the wrong and injury, if any, to the patient are regarded as the result of joint action of the physicians, and both physicians are liable." Id. No. 14.9. Craig contended that the instructions were factually and legally proper because she had presented evidence that both physicians had a duty to review the

1994 mammogram, identify the visibly suspicious area, and order further testing, making them potentially concurrent tortfeasors under Oklahoma law as to that portion of her claim. (Appellant's App. at 39.) Without the instructions, Craig argued, "the jury [would] be hopelessly confused" because the general direct cause instruction gave insufficient guidance on the issue of causation in the circumstance in which it would be asked to decide only Dr. Murphree's negligence. (Id. at 40.) According to Craig, the concurrent cause instruction "exactly fit[] the facts of this case" (id.) and would help the jury understand that "there may be more than one cause of an injury." (Id. at 41.) Without comment, the court denied Craig's request to submit the two instructions to the jury.

The jury returned a verdict in favor of Dr. Murphree, and six months later, the district court returned a verdict in favor of Dr. Balluh. Craig does not appeal the latter judgment.

## II

> When a motion for a new trial is predicated, as here, upon a challenge to the jury instructions, we consider the instructions given as a whole. In reviewing the instructions, we consider all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues.

Patty Precision Prods. Co. v. Brown & Sharpe Mfg. Co., 846 F.2d 1247, 1252 (10th Cir. 1988) (citations and quotations omitted). "We review the record as a

whole to determine whether the instructions state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable." Woolard v. JLG Indus., Inc., 210 F.3d 1158, 1177 (10th Cir. 2000) (quotations omitted). "The admission or exclusion of a jury instruction is within the discretion of the trial court," and "[c]hallenges which merely pertain to the trial judge's language or formulation of the charge are reversible only for an abuse of discretion." Richards v. Attorneys' Title Guar. Fund, Inc., 866 F.2d 1570, 1575, 1573 (10th Cir. 1989). When a party argues, as here, that the jury was not fully or sufficiently instructed on its theory of the case, "[t]he question of whether a jury was properly instructed is a question of law, and thus, our review is de novo." United States v. Lee, 54 F.3d 1534, 1536 (10th Cir. 1995); accord Woolard, 210 F.3d at 1177.

We begin with the general principle that a party is entitled to an instruction based on its theory of the case whenever it produces sufficient evidence to support it and submits an instruction that is a correct statement of the law. FDIC v. Schuchmann, 235 F.3d 1217, 1222 (10th Cir. 2000). "It is not error," however, "to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions." Id. (quotation omitted).

There is no question that the uniform instructions requested by Craig correctly stated Oklahoma tort law. See 12 Okla. Stat. Ann. tit. 577.2; Fontenot

v. State, 881 P.2d 69, 85 (Okla. Crim. App. 1994) ("Generally speaking, when a jury must be instructed on a certain subject, the relevant uniform instruction shall be used unless the court determines that it does not accurately state the law." (quotation omitted)). A concurrent causation instruction is warranted when "there is evidence that the injury may have been produced by two or more concurrent causes." Okla. Unif. Jury Instructions Civil 2d No. 9.6, notes on use (emphasis added). Based on our review of the record, we conclude that Craig presented evidence to support a finding of joint duty and concurrent causation arising from the 1994 examination.

We address Dr. Murphree's contentions that a new trial is not warranted because (1) he and Dr. Balluh acted independently; (2) the jury did not hear all of the evidence relating to and did not decide the issue of Dr. Balluh's alleged negligence; (3) Craig did not appeal the judgment in favor of Dr. Balluh; and (4) he and Dr. Balluh did not owe the "same" duty and thus could not be jointly responsible for Craig's injury.

## A

Dr. Murphree's first contention—that the proposed instructions were unwarranted because he and Dr. Balluh acted independently—is without merit. In Radford-Shelton Associates Dental Laboratory v. Saint Francis Hospital, Inc., 569 P.2d 506, 509 (Okla. Ct. App. 1976), the Oklahoma Court of Appeals stated that

"[c]oncurrent tortfeasors [are] those whose independent, negligent acts combined or concurred at one point in time to injure a third party." Id. (emphasis added).

**B**

Similarly, the jury's failure to hear the totality of the evidence against Dr. Balluh is not determinative. Juries often determine the negligence of only one alleged tortfeasor (e.g., when other alleged tortfeasors settle before trial). That the jury is not asked to determine the existence or degree of negligence of all tortfeasors does not mean that their actions did not concurrently cause plaintiff's injury.

Although the jury heard all of Craig's evidence regarding Dr. Balluh's alleged negligence, it did not hear all of Dr. Balluh's defense evidence. This circumstance does not detract from the jury's knowledge that Craig alleged that both physicians directly caused her loss of chance of survival by negligently failing to further evaluate the changes evidenced in the mammograms. In light of the evidence presented to the jury and the district court's refusal to instruct on joint duty and concurrent causation, we are not satisfied that the jury understood the issues to be resolved and its duty to resolve them. We are not satisfied that the jury understood that even if Dr. Balluh, as the treating physician and last physician with a duty to view the mammograms and/or to order further testing, breached her duty, Dr. Murphree could still be held liable for any independent

-9-

failure to properly interpret the mammograms, report changes, and order further testing.

## C

We also reject Dr. Murphree's claim that Craig's failure to appeal the judgment in favor of Dr. Balluh forecloses her right to a new trial on the issue of Dr. Murphree's negligence. A conclusion that Dr. Balluh did not breach the standard of care in regard to viewing the mammograms does not mean that Dr. Murphree was not negligent for failing to properly report the micro-calcifications and recommend further evaluations. Dr. Murphree admitted that he did not mention the micro-calcifications on his report, and Dr. Balluh testified that she did not independently notice the micro-calcifications and that Dr. Murphree's report that the mammograms were negative for cancer was reassuring to her. (Appellant's App. at 53–54; Appellee's App. at 218.) Dr. Balluh testified that if a radiologist had reported the micro-calcifications, stated that they were possibly new growth, and recommended further evaluation, she would have followed those recommendations. (See Appellant's App. at 54; Appellee's App. at 218.)

Furthermore, the propriety of a jury instruction is determined as of the time the case goes to the jury, not with the hindsight of a later trial court finding that one defendant was not in fact negligent. As the notes to the Uniform Jury Instructions state, the concurrent causes instruction should be used if there is

evidence that an injury <u>may</u> have been produced by two or more concurrent causes. In addition to the evidence discussed above, the jury heard expert testimony that, given Craig's history, Dr. Balluh was additionally independently negligent for (1) having failed to order a full biopsy of the mass in 1993 that would have excluded cancer as the cause of the palpable abnormality and (2) having failed to further evaluate a palpable area of fibrosis in the upper left breast quadrant in 1994. (Appellant's App. at 99, 103–06.) The requested instructions would have allowed the jury to understand that physicians who concurrently provide medical services to a patient have a joint duty to their patients; that there may be more than one direct cause of injury to a patient; and that the jury had a duty to hold Dr. Murphree liable if it found that he was negligent <u>notwithstanding</u> any alleged concurrent negligence of Dr. Balluh. The instructions, as given, did not clarify the confusion created by evidence demonstrating joint duties and concurrent negligence where the jury would be determining the liability of only one physician. The general negligence and direct cause instructions did not inform the jury of the law of joint duty of physicians or of concurrent causes of injury.[2]

---

[2] The cases cited by Dr. Murphree are distinguishable and not persuasive. One addresses a factual situation involving successive tortfeasors whose negligence caused separate injuries. <u>See Radford-Shelton</u>, 569 P.2d 506. In another, the court's focus was on the proximate cause doctrine in a situation in

(continued...)

**D**

Finally, we address Dr. Murphree's contention that the joint duty of physicians instruction was inapplicable because he and Dr. Balluh did not have the same duty and thus could not be jointly responsible for Craig's loss of chance. We disagree. The duty that physicians owe to a patient, whether in interpreting a physical examination of the patient or interpreting x-ray reports, is to follow the relevant medical standard of care. See Benson v. Tkach, 30 P.3d 402, 404 (Okla. Ct. App.), cert. denied (July 3, 2001). At trial, Craig argued that both physicians concurrently breached their duties to independently notice clinical changes that, given her extensive family history of breast cancer, merited further tests and evaluations. Both Dr. Murphree and Dr. Balluh performed examination and diagnosis techniques intended to discover any early signs of breast cancer. In that regard, the duty they both owed to Craig was the "same"—to properly diagnose her condition. Their continuing duty, whether in interpreting Craig's physical examination or her x-ray reports, was to follow the relevant medical standard of care.

Given the testimony of Craig's experts, the jury could have found that Dr.

---

[2](...continued)
which one defendant created a condition and the second defendant committed an extraordinary and unexpected act that actually caused the injury. See Janow v. Lewis, 172 P.2d 315 (Okla. 1946).

Murphree breached his standard of care, contributing to Craig's decreased chance of survival. The tendered joint duty of physicians instruction thus would have clarified that Dr. Murphree's negligence, if any, would not be excused by the negligence of Dr. Balluh, if any. Without this instruction, the jury was not fully informed of the law of physicians' joint duties and liabilities.

### III

We conclude that the jury was not fully instructed on governing law that "provided [it] with an ample understanding of the issues and the standards applicable." Woolard, 210 F.3d at 1177 (quotation omitted). We hold that the court abused its discretion in refusing to submit the tendered joint duty and concurrent causes instructions to the jury.

The judgment of the district court is **REVERSED**, and the case is **REMANDED** for a new trial.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge