2008 OK CIV APP 61

**RANKEN ENERGY CORPORATION,**
an Oklahoma Corporation,
**Plaintiff/Appellant,**

v.

**DKMT COMPANY, Defendant/Appellee.**

No. 104,711.

Court of Civil Appeals of Oklahoma,
Division No. 3.

March 28, 2008.

Certiorari Denied May 27, 2008.

Julie R. Justice, Norman, OK, for Plaintiff/Appellant.

James B. Blevins, Purcell, OK, for Defendant/Appellee.

KENNETH L. BUETTNER, Presiding Judge.

¶1 Plaintiff/Appellant Ranken Energy Corporation (Operator) filed a Petition for the Appointment of Appraisers March 14, 2007, stating it was the designated operator for the drilling and completion of oil and gas wells upon 5 sites, the surface of which was owned in whole or part by Defendant/Appellee DKMT Company (Surface Owner). Surface Owner filed a Motion for Additional Security and a Motion to Dismiss, alleging noncompliance with the Oklahoma Surface Damages Act of 1982, 52 O.S.2001 § 318.2 *et seq.* (the Act), seeking a bond for each well and an increase in the amount of the bond from the statutory amount of $25,000. In a Minute Order filed May 2, 2007,[1] the District Court conditionally overruled Surface Owner's Motion to Dismiss; gave Operator 20 days to amend its petition to describe with particularity each site; and ordered Operator to provide additional security in the amount of $25,000 per site exclusive of the $25,000 already posted. We reverse.

¶2 Operator contends that (1) the District Court's requirement of posting additional bonds for each proposed well site circumvented the rights of the mineral owner; (2) the District Court's requirement of posting additional bonds for each proposed well site exceeded the scope of the Oklahoma Surface Damages Act and (3) the District's Court's requirement of posting additional bonds for each proposed well site was premature and not supported by law or fact.[2]

¶3 In its Motion to Dismiss and re-urged on appeal, Surface Owner asserts that the Act should be read to require a posting of the bond for each well site and each proposed well site. It further argued that the statutory amount of security, $25,000, was disproportionate to the number of well sites proposed by Operator, and should be increased.

¶4 The over-arching issue in the present case is whether the trial court's order complies with § 318.4 of the Act which states:

§ 318.4. **Undertakings which may be posted as damage deposit**

A. Every operator doing business in this state shall file a corporate surety bond, letter of credit from a banking institution, cash, or a certificate of deposit with the Secretary of State in the sum of Twenty-five Thousand Dollars ($25,000.00) condi-

---

1. Although the Minute Order was signed by the trial court, it was never journalized. The Oklahoma Supreme Court declared the May 2, 2007 order, which directed the plaintiff to post an additional $25,000 per well site, in addition to the security already posted pursuant to 52 O.S. § 318.4(a), an interlocutory order appealable by right because it requires the plaintiff to pay money *pendente lite.*

2. Operator also argues that Surface Owner's Motion for Additional Security was not supported by law or fact. Although raised in a cursory man-

ner to the trial court, on appeal this allegation is placed in a 12 O.S.2001 § 2011 posture, constituting an issue raised for the first time on appeal. "Rule 11" violations have specific procedures which must be followed, none of which occurred according to the record presented for appeal. We decline to address this issue. "Issues not properly presented to the trial court cannot be considered by this Court on appeal." *Steiger v. City National Bank of Tulsa,* 1967 OK 41, 424 P.2d 69 (Syllabus by the Court, ¶3).

tioned upon compliance with Sections 318.2 through 318.9 of this title for payment of any location damages due which the operator cannot otherwise pay. The Secretary of State shall hold such corporate surety bond, letter of credit from a banking institution, cash or certificate of deposit for the benefit of the surface owners of this state and shall ensure that such security is in a form readily payable to a surface owner awarded damages in an action brought pursuant to this act. Each corporate surety bond, letter of credit, cash, or certificate of deposit filed with the Secretary of State shall be accompanied by a filing fee of Ten Dollars ($10.00).

B. The bonding company or banking institution shall file, for such fee as is provided for by law, a certificate that said bond or letter of credit is in effect or has been cancelled, or that a claim has been made against it in the office of the court clerk in each county in which the operator is drilling or planning to drill. Said bond or letter of credit must remain in full force and effect as long as the operator continues drilling operations in this state. Each such filing shall be accompanied by a filing fee of Ten Dollars ($10.00).

C. Upon deposit of the bond, letter of credit, cash, or certificate of deposit, the operator shall be permitted entry upon the property and shall be permitted to commence drilling of a well in accordance with the terms and conditions of any lease or other existing contractual or lawful right.

D. If the damages agreed to by the parties or awarded by the court are greater than the bond, letter of credit, cash, or certificate of deposit posted, the operator shall pay the damages immediately or post an additional bond, letter of credit, cash, or certificate of deposit sufficient to cover the damages. Said increase in bond, letter of credit, cash, or certificate of deposit shall comply with the requirements of this section.

¶ 5 "When reexamining a trial court's legal rulings, an appellate court exercises plenary, independent and non-deferential authority." *Villines, II v. Szczepanski*, 2005 OK 63, ¶ 8, 122 P.3d 466, 470. Because

the trial court's order found that the Operator was required to post security for each well site and that the trial court was authorized to increase security before damages are incurred, then based on our reasoning which will follow, we must agree that § 318.4 is sufficiently ambiguous (subject to more than one meaning) so as to require the application of statutory construction. "Only where legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity, are rules of statutory interpretation employed.... When possible, different provisions must be construed together to effect an harmonious whole." *Id.* at ¶ 9, pp. 470–471.

¶ 6 The purpose of the Act was to balance the interests of the oil and gas industry and the agricultural industry. The Oklahoma Supreme Court stated, in *Davis Oil Company v. Cloud*, 1986 OK 73, ¶ 16, 766 P.2d 1347, 1351:

It cannot be said that the surface of the land constitutes a less vital resource to the State of Oklahoma than does the mineral wealth which underlies it. The surface supports development for business, industrial and residential purposes. It also supports our vital agricultural industry. The passage of the surface damages act guarantees that the development of one industry is not undertaken at the expense of another when the vitality of both is of great consequence to the well-being of our economy. In times when both the agricultural and oil and gas segments of our economy are suffering it is especially important that such legislation is enforced.

¶ 7 The Act recognizes the value of both industries and strives for balance.

¶ 8 At issue are the trial court's rulings requiring security for each well site, and increasing the amount of security before a determination of damages. We find that both of those orders exceeded the bounds of the statutory limits.

¶ 9 First, because § 318.4(A) requires the security bond be filed with Oklahoma's Secretary of State "for the benefit of the surface owners," and not originally in the county in which the operator plans to drill, the operator's surety bond covers all well sites it has

in Oklahoma. This interpretation is bolstered by § 318(B) which next requires the bonding company or banking institution to file a certificate, with respect to the surety bond filed in the Secretary of State's office, in any county where the operator "... is drilling or planning to drill." There is no reference to the of number of well sites, or increasing of the security for any reason, just a notice in the county of drilling that the required surety bond is currently filed with the Secretary of State. The surety bond must remain in effect for as long as the "... operator continues drilling in this state." § 318.4(B). Surface Owner's argument that the language in paragraph C, "Upon deposit of the bond, letter of credit ... the operator shall be permitted to commence drilling of a well in accordance with the terms and conditions of any lease or other existing contractual or lawful right ...." means that the operator is required to post security for every well drill or proposed is overwhelmed by the context of the rest of § 318.4, as well the balance of the interests of the parties. Contrary to Surface Owner's argument, the surety bond applies whether Operator proposes fives wells from the same landowner, or five different landowners. There is nothing in the Act that suggests an operator must post a separate surety bond for each well proposed to be drilled in the state. Rather, the Act contemplates a single $25,000 bond to cover all of an operator's drilling operations throughout the state.

¶ 10 Finally, we find that the statute does not permit raising the bond until damages are determined, by agreement of the parties or by the court, which are greater than the surety bond. Paragraph D states "... the operator shall pay the damages immediately or post an additional bond, letter of credit, cash, or certificate of deposit sufficient to cover the damages." The centrally filed surety bond is sufficient until damages for a particular drilling site is determined to be greater than the bond amount. When the Court increased the surety bond's amount, without a determination that the damages were greater than the bond amount, and before Operator had an opportunity to pay the determined amount, it exceeded its statutory authority.

¶ 11 The trial court's order of May 2, 2007 is reversed. Section 318.4 requires a single, centrally filed $25,000 surety bond to cover an operator's potential liability for damages un the Act. REVERSED AND REMANDED with DIRECTIONS to proceed in a manner consistent with this opinion.

MITCHELL, V.C.J., and BELL, J., concur.