**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KELLI MIKE,

        Plaintiff-Appellant,

v.

PROFESSIONAL CLINICAL
LABORATORY, INC.,

        Defendant-Appellee.

No. 11-5030
(D.C. No. 4:09-CV-00363-JHP-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.

---

This diversity action arose from a workplace drug test. Plaintiff-Appellant

Kelli Mike was an employee of Leisure Village Health Care Center. Leisure

Village obtained a urine sample from Ms. Mike and submitted it to

Defendant-Appellee Professional Clinical Laboratory, Inc. ("ProLab") for

processing. Ms. Mike's test results came back positive for marijuana. Leisure

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Village reported the results to the Oklahoma Board of Nursing ("the Board"). The Board placed Ms. Mike's nursing license on probation and later revoked it. Ms. Mike filed a complaint in federal court alleging that ProLab violated the Oklahoma Standards for Workplace Drug and Alcohol Testing Act (the "Testing Act"), Okla. Stat. Ann. tit. 40 § 551-565 (West 2011), and committed gross negligence during the drug-testing process.[1]

The district court granted summary judgment for ProLab after concluding that the civil remedy provision in the Testing Act did not apply to testing facilities and that Ms. Mike had failed to establish that ProLab committed gross negligence. We affirm in part and reverse and remand in part.

I. Background

Leisure Village is a long-term care, skilled nursing facility located in Tulsa, Oklahoma. It contracted with ProLab for clinical laboratory services. In June 2007, at the time of the workplace drug test, Leisure Village employed Ms. Mike as a Licensed Practical Nurse.

The contract between Leisure Village and ProLab did not provide for employee drug testing services, and ProLab was not licensed to perform forensic drug tests. Nevertheless, a Leisure Village employee asked ProLab to pick up and

---

[1]Plaintiff Mike filed two complaints. The other complaint was filed against Leisure Village and other defendants in state court, where Ms. Mike accepted defendants' offer to allow judgment to be entered against them for $100,000.

test urine samples that Leisure Village had collected from certain employees, including Ms. Mike.

Ms. Mike submitted her urine sample on June 28, 2007. The next day, a ProLab employee picked up the collected, unsecured samples and transported them to ProLab's facility in Oklahoma City. ProLab did not test the samples. Instead, ProLab contracted with Quest Diagnostics to test them. Ms. Mike's urine sample was not forwarded to Quest until July 11.

Plaintiff Mike's sample tested positive for marijuana. ProLab forwarded the results to Leisure Village. The results were labeled: "FOR MEDICAL TREATMENT ONLY . . . ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING." Aplt. App., Vol. 3 at 404. On July 17, Leisure Village reported the results of Ms. Mike's drug test to the Board. Ms. Mike did not return to Leisure Village after she submitted her urine sample, and no one from Leisure Village contacted her about her test results.

In September 2007, Ms. Mike received a notice from the Board summoning her to a meeting. At the meeting, the Board informed her that her workplace drug test results indicated the use of controlled substances. The Board required her to pay a $500 administrative fine and placed her nursing license on probationary status. The Board further imposed requirements for her to meet during the probationary period and warned that her license would be revoked if she did not fulfill them. The requirements included: completing a substance abuse

evaluation, an in-person course on Nursing Jurisprudence (4 hours), and an in-person course on Critical Thinking (8 hours). She was also required to remain free of alcohol while on probation and to submit to periodic body fluid testing twice each month for twelve months, at her cost, with the results to be submitted immediately to the Board.

Ms. Mike failed to meet certain of these requirements during the probationary period. As a result, the Board suspended her license and later notified Ms. Mike that her license had been revoked.

After Ms. Mike filed her complaint, ProLab moved for summary judgment. The court issued a minute order indicating that it was going to grant ProLab's motion. On February 16, 2011, the court entered an Opinion and Order granting the motion and entering judgment in favor of ProLab. Ms. Mike filed a timely notice of appeal.

After reviewing ProLab's post-judgment motion for attorney fees, counsel for Ms. Mike learned that the district court had contacted ProLab's counsel to request that he draft a proposed opinion and order granting summary judgment in ProLab's favor. Based on this discovery, Ms. Mike filed a Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b). The district court denied the motion. Ms. Mike did not file a notice of appeal from the district court's denial of her 60(b) motion.

## II. Discussion

We review de novo the district court's decision to grant summary judgment, applying the same standard as the district court. *Lauck v. Campbell Cnty.*, 627 F.3d 805, 809 (10th Cir. 2010). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Ms. Mike raises the following issues on appeal: (A) Is the judgment void for lack of due process? (B) Did the district court err when it held that the Testing Act does not provide a civil remedy for employees against testing facilities? (C) Did the district court err when it held that Ms. Mike could not prove a claim of gross negligence against ProLab?

### A. 60(b) Motion and Due Process

Ms. Mike contends that "the manner in which the opinion and order was solicited, drafted, and entered constitutes a failure of due process." Aplt. Br. at 17. She made this argument in her Fed. R. Civ. P. 60(b) motion, which was filed in the district court over three weeks after she filed her notice of appeal from the February 16, 2011 judgment. The district court denied the 60(b) motion on April 8. Ms. Mike did not file a separate appeal from the April 8 denial of her 60(b) motion. She states in her opening brief that "[t]his appeal is from the February 16, 2011 Judgment which disposed of all of [Ms. Mike's] claims and the April 8, 2011 Minute Order which announced the denial of [Ms. Mike's] Rule

60(b) Motion." Aplt. Br. at 10.

We lack jurisdiction to consider Ms. Mike's arguments regarding the denial of her 60(b) motion because she failed to file a timely notice of appeal from that order. "An appeal . . . may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4." Fed. R. App. P. 3(a)(1). "The notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A). "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

Ms. Mike may not inject a challenge to the April 8 order denying her 60(b) motion into her appeal from the February 16 judgment. *See Jordan v. Bowen*, 808 F.2d 733, 736-37 (10th Cir. 1987); *see also* 16A Charles Alan Wright et. al., Federal Practice & Procedure § 3949.1 (4th ed. 2008) ("In a circuit [, such as the Tenth Circuit,] that shares the majority view that a pending appeal does not prevent a district court from denying a Civil Rule 60(b) motion, the movant must make sure to take an appeal from such a denial in order to preserve the right to challenge the denial on appeal.").[2]

---

[2]When a court requests counsel for the prevailing party to prepare a proposed order, or in this case a proposed opinion and order, all parties should be aware of the request and counsel should serve a copy of the proposed opinion and order on opposing counsel no later than when it is submitted to the court. Ms. Mike reports this did not happen, and ProLab does not suggest otherwise.

B.  Civil Liability Under the Testing Act

The parties dispute whether Ms. Mike may bring a civil action against a testing facility for a violation of the Testing Act.  In its summary judgment motion, ProLab argued that the Testing Act authorizes a civil action remedy against employers only.  The district court agreed.  Although we agree with the district court's conclusion, we reach that conclusion on different grounds.[3]

In concluding that the Testing Act does not provide for a civil action against a testing facility, the district court explained that:  (1) the Testing Act clearly imposes a duty on employers, but the "Act is devoid . . . of any specific reference to a duty owed *to [an] employee* on the part of a *testing facility*," Aplt. App., Vol. 1 at 128; and (2) the reference to exhaustion of administrative remedies in § 563(A) and the nature of the damages provided for in § 563(B) imply that the civil remedy was intended to be wielded only by employees against employers.

The district court's first statement is not entirely correct.  Although much of the Testing Act refers to duties owed to an employee by an employer, there is

_____

[3]"We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court."  *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (quotations omitted).

at least one specific reference in the Act to a duty owed to an employee by a testing facility. *See* Okla. Stat. Ann. tit. 40 § 560(C) (West 2011) (providing that a testing facility owes a duty not to disclose to any employer any information related to "[t]he general health, pregnancy or other physical or mental condition" of the employee or the presence of any other drugs not requested by the employer).

The district court next relied on the language of the civil remedy provision, which states:

> Any person aggrieved by a willful violation of the Standards for Workplace Drug and Alcohol Testing Act may institute a civil action in a court of competent jurisdiction within two (2) years of the person's discovery of the alleged willful violation or of the exhaustion of any internal administrative remedies available to the person, or be barred from obtaining the relief provided for in subsection B of this section.

*Id*. § 563(A). The district court concluded that the reference to "the exhaustion of internal administrative remedies" implies that the provision applies only to actions against employers.

As Ms. Mike argues in her opening brief, however, this language is couched in the disjunctive—a person can sue within two years of the discovery of the alleged violation *or* the exhaustion of internal administrative remedies. Ms. Mike argues further that the civil remedy provision speaks in terms of an aggrieved person bringing a civil action for a willful violation and does not expressly limit that action to one against employers only.

-8-

The district court also relied on the damages provision to support its interpretation, concluding that the damages "are clearly of a kind an employee would seek from an employer, not a testing facility." Aplt. App., Vol. 1 at 128. But again, there is some flexibility in the statutory language. The damages provision states:

> A prevailing party may be awarded declaratory or injunctive relief and compensatory damages, *which may include, but not be limited to*, employment, reinstatement, promotion, the payment of lost wages and other remuneration to which the person would have been entitled and payment of and reinstatement to full benefits and seniority rights. Reasonable costs and attorney fees may be awarded to the prevailing party.

Okla. Stat. Ann. tit. 40 § 563(B) (West 2011) (emphasis added). As Ms. Mike explains, the provision states that compensatory damages "may include, but are not limited to," the damages related to the employer-employee relationship, which means that there could be non-employment related compensatory damages available to plaintiffs who sue testing facilities for violations of the Act.

For the foregoing reasons, we do not consider the Testing Act's language alone sufficient to compel the conclusion that an employee may not bring a civil action against a testing facility. We therefore employ principles of statutory interpretation to discern the legislature's true intent. *See Ranken Energy Corp. v. DKMT Co.*, 190 P.3d 1174, 1176 (Okla. Civ. App. 2008). No Oklahoma court has ruled specifically on the question at issue in this case, although the Oklahoma Supreme Court has explained generally that the Testing Act was "enacted in 1993

-9-

to govern employers who test job applicants or employees for drugs or alcohol." *Estes v. ConocoPhillips Co.*, 184 P.3d 518, 522 (Okla. 2008). That explanation of the Testing Act's purpose, however, does not conclusively resolve whether plaintiffs may sue only employers for violations of the Act.

"The goal of inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature." *State ex rel. Wright v. Okla. Corp. Comm'n*, 259 P.3d 899, 901 (Okla. Civ. App. 2011) (quotation omitted). One way to determine legislative intent is to compare a statutory provision before and after an amendment. *See Indep. Fin. Inst. v. Clark*, 990 P.2d 845, 852 (Okla. 1999) ("A subsequent amendment to an act can be used to ascertain the meaning of a prior statute. Where the meaning of a prior statute is subject to serious doubt and has not been judicially determined, the presumption arises that a subsequent amendment was meant to clarify as opposed to change, the prior statute."); *Tex. Cnty. Irrigation & Water Res. Ass'n v. Okla. Water Res. Bd.*, 803 P.2d 1119, 1122 (Okla. 1990) ("If the meaning of an antecedent statute was in doubt, a presumption arises that the amendatory act was intended to clarify the existing law's ambiguity. A clarification can be given retrospective application if it does not impair vested rights.").

The parties did not provide much argument or authority to aid our consideration of this issue of statutory interpretation. Our own research of the statute's legislative history, however, revealed that both the civil remedy and

-10-

damages provisions were recently amended in May 2011, with the amended provisions taking effect in November 2011. These amendments provide insight into the original intent of the legislature. The amended civil remedy provision now states:

> Any person aggrieved by a willful violation of the Standards for Workplace Drug and Alcohol Testing Act may institute a civil action in a court of competent jurisdiction within **one (1) year** of the alleged willful violation or be barred from obtaining the relief provided for in subsection B of this section. **A willful violation of the Standards for Workplace Drug and Alcohol Testing Act requires proof by the preponderance of the evidence that the employer had a specific intent to violate the act.**

Okla. Stat. Ann. tit. 40 § 563(A) (West 2011) (effective Nov. 1, 2011) (changes in bold, strikeouts omitted). The newly added definition of a "willful violation" clarifies the legislature's intent that this provision provides for a civil action against employers only.

The amendments to the damages provision provide further support for the conclusion that an employee may bring a civil action only against an employer for violations of the Testing Act. The new provision states:

> A prevailing party may be awarded lost wages to which the person would have been entitled and **an additional equal amount as liquidated damages**. **Interim earnings or amounts earnable with reasonable diligence by the aggrieved person shall operate to reduce the lost wages otherwise allowable**. Reasonable costs and attorney fees may be awarded to the prevailing party**, whether plaintiff or defendant.**

-11-

Okla. Stat. Ann. tit. 40 § 563(B) (West 2011) (effective Nov. 1, 2011) (changes in bold, strikeouts omitted). These amendments, which provide for damages only in the form of lost wages, indicate that the legislature wanted to limit actions to those by an employee against an employer.

Given the Testing Act's overall purpose to govern employer-initiated drug testing of employees, and the clarification provided by the newly amended statutory provisions, we agree with the district court's conclusion that civil actions may only be brought against employers for willful violations of the Testing Act.[4] Accordingly, we affirm summary judgment in favor of ProLab on Ms. Mike's Testing Act claim.

C.  Gross Negligence Claim

The district court also granted summary judgment on Ms. Mike's gross negligence claim on the element of proximate cause.[5] Because we think

---

[4]Although this is a question of first impression under Oklahoma law, "[u]nder our own federal jurisprudence, we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

[5]The district court followed a circuitous route to this destination. Although it found the Testing Act did not authorize Ms. Mike's claims against the testing lab, it nonetheless analyzed the Testing Act claim and decided that Ms. Mike could not show proximate cause. When the court moved on to Ms. Mike's gross negligence claim, it relied on its proximate cause analysis to enter summary judgment on that claim as well.

reasonable jurors could disagree on this issue, we conclude that summary judgment should not have been granted.

The essential elements of a negligence claim are: (a) a duty owed by the defendant; (b) a failure to properly exercise or perform that duty; and (c) the defendant's failure to exercise his duty of care is the proximate cause of plaintiff's injuries. *See Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 263 (Okla. 1982). A claim of gross negligence is the same as a negligence claim, differing only as to degree. *See NMP Corp. v. Parametric Technology Corp.*, 958 F. Supp. 1536, 1546 (N.D. Okla. 1997). Oklahoma law defines the degrees of negligence as follows: "Slight negligence consists in the want of great care and diligence; ordinary negligence in the want of ordinary care and diligence; and gross negligence in the want of slight care and diligence." Okla. Stat. Ann. tit. 25 § 6 (West 2011).

In support of her gross negligence claim, Ms. Mike alleged that ProLab owed her a duty to be tested in accordance with all applicable state laws, including the Testing Act and the State Board of Health rules, that ProLab breached this duty by subjecting her to drug testing in violation of the Act, and that ProLab's actions were the proximate cause of her injuries. The court granted summary judgment in favor of ProLab on this claim, concluding that any gross negligence in failing to adhere to the Testing Act "was not the proximate cause of

[Ms. Mike's] injuries, having been supervened by [her] failure to maintain her license." Aplt. App., Vol. 1 at 141.

We have previously summarized the applicable law on proximate and supervening cause:

> Under Oklahoma law, if an unforeseeable event intervenes between the breach of duty, and that event directly causes the injury completely independent of the original breach, then the intervening cause becomes the supervening cause and breaks the causal nexus between the initial breach and the subsequent injury. The test to determine whether a supervening cause exists is whether the cause is (1) independent of the original act or omission, (2) adequate by itself to bring about the resulting harm to the plaintiff, and (3) not reasonably foreseeable by the defendant.

*Woolard v. JLG Indus., Inc.*, 210 F.3d 1158, 1181 (10th Cir. 2000) (internal alterations, quotations, and citations omitted).

Although the district court mentioned only Ms. Mike's conduct in failing to abide by the terms of her probation as a supervening cause in its analysis of her gross-negligence claim, we must also address ProLab's argument that Leisure Village's forwarding the test results to the Nursing Board constituted a supervening cause. The district court analyzed both causation arguments in its discussion of the Testing Act claim. In doing so, the district court found that both Ms. Mike's and Leisure Village's conduct were each (1) adequate to cause Ms. Mike's injuries, (2) an independent action, and (3) not reasonably foreseeable to ProLab.

-14-

We disagree with the district court's determination that the conduct of Leisure Village and Ms. Mike were supervening causes of her injuries as a matter of law. Reasonable jurors could disagree. *See Tomlinson v. Love's Country Stores, Inc.*, 854 P.2d 910, 916 (Okla. 1993) ("The question of causation is one of fact for the jury unless there is no evidence from which the jury could reasonably find a causal nexus between the negligent act and the resulting injuries.").

First, the district court's analysis of Ms. Mike's failure to abide by the terms of her probation assumes that Ms. Mike did not suffer any damages until her probation violations and license revocation. But she began suffering damages before her license was revoked. As a result of the drug test being reported to the Nursing Board, she was placed on probation with a number of mandatory requirements to fulfill. Some of these requirements caused her to incur financial burdens. For example, within the first thirty days of her probationary period, she was required to pay a $500 administrative penalty. In addition, she had to pay for the costs of the classes and drug testing that were required as part of her probation. Ms. Mike presented sufficient evidence to demonstrate a genuine dispute as to whether her own actions were an adequate and independent cause of all of her injuries.

Second, we also disagree with the district court's determination that Leisure Village's conduct was a supervening cause of Ms. Mike's injuries as a matter of law. To reach that conclusion, the district court had to find that ProLab

could not have reasonably foreseen that Leisure Village would willfully disregard the disclaimer that was printed on the test results, which indicated that the analysis was performed as non-forensic testing, and submit them to the Nursing Board. Under Oklahoma law, the foreseeability of an intervening cause is ordinarily a question of fact for the jury. *Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 264 (Okla. 1982). Foreseeability becomes a question of law only when there is no contrary evidence and "but one reasonable inference may be drawn from the adduced facts." *Id.*

"[V]iew[ing] the record in the light most favorable to the nonmoving party," *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004), the evidence here showed that ProLab was aware of and participated in Leisure Village's noncompliance with the Testing Act. Leisure Village contracted with ProLab to provide laboratory services for Leisure Village's nursing home patients. The contract did not provide for employee drug testing services. ProLab was not licensed to conduct forensic drug tests. Leisure Village asked ProLab to pick up employee urine samples for drug screening, which ProLab did even though such testing was not part of its contract. ProLab also was aware that Leisure Village failed to complete the proper collection procedures, including chain of custody. Even so, ProLab then sent the samples to Quest Diagnostics for testing and submitted the test results to Leisure Village.

A rational jury could conclude that ProLab was aware that Leisure Village previously disregarded the limits of its contract by requesting ProLab to perform an unauthorized employee drug screen, and also was aware that Leisure Village disregarded the collection procedures for forensic drug testing outlined in the Testing Act. A rational jury could therefore infer that ProLab could reasonably foresee Leisure Village's also disregarding the non-forensic testing disclaimer on the results ProLab submitted to it and reporting those results to the Nursing Board. ProLab is not entitled to judgment as a matter of law on the question of causation because the foreseeability of any intervening causes is a question of fact for a jury to resolve.

In the district court and on appeal, the parties focused almost exclusively on the causation issue and did not fully address whether ProLab owed a duty to Ms. Mike or whether it breached that duty during the testing process. Accordingly, we take no position on those elements of Ms. Mike's gross negligence claim. Because the district court resolved this claim on the causation element, which involves disputed issues of fact, summary judgment was improper.

Accordingly, we AFFIRM the district court's judgment in favor of ProLab on the Testing Act claim, we REVERSE the district court's judgment on the gross

negligence claim, and we REMAND this case for further proceedings consistent with this order and judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge